UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                          CHAPTER 11

CELEBRITY RESORTS, LLC, *et al.*,               CASE NO.: 6:10-bk-3550-ABB

                    Debtors.

_____/                Jointly-Administered with Cases
                                                6:10-bk-3551 through 6:10-bk-3585


### AMENDED JOINT DISCLOSURE STATEMENT
### PURSUANT TO 11 U.S.C. §1125 FOR CELEBRITY RESORTS, LLC, *ET AL.*


COUNSEL FOR DEBTORS

R. SCOTT SHUKER, ESQ.
JUSTIN M. LUNA, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
390 N. ORANGE AVENUE, SUITE 600
ORLANDO, FLORIDA  32801


November 19, 2010

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

</div>

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **CELEBRITY RESORTS, LLC,** *et al.*, | **CASE NO.: 6:10-bk-3550-ABB** |
| **Debtors.** | |
| _____/ | **Jointly-Administered with Cases**<br>**6:10-bk-3551 through 6:10-bk-3585** |

<div align="center">

**AMENDED JOINT DISCLOSURE STATEMENT**
**PURSUANT TO 11 U.S.C. §1125 FOR CELEBRITY RESORTS, LLC,** *ET AL.*

</div>

**I.      INTRODUCTION AND SUMMARY**

This Amended Joint Disclosure Statement ("Disclosure Statement") is filed pursuant to the requirements of §1125 of Title 11 of the United States Code (the "Code"). This Disclosure Statement is intended to provide adequate information to enable holders of claims in the above-captioned bankruptcy cases ("Bankruptcy Cases") to make informed judgments about the Joint Plan of Reorganization (the "Plan") submitted by Celebrity Resorts, LLC ("Celebrity Resorts"), and thirty-five (35) of its affiliated or related debtors and debtors-in-possession as set forth in **Exhibit A** (collectively, Celebrity Resorts and certain affiliates and related entities listed on **Exhibit A** hereafter referred to as "Debtors"). The Debtors are soliciting votes to accept the Plan. The overall purpose of the Plan is to provide for the restructuring of the Debtors' liabilities in a manner designed to maximize recoveries to all stakeholders. The Debtors believe that the Plan provides the best means currently available for their emergence from Chapter 11 and the best recoveries possible for holders of claims and interests against the Debtors, and thus strongly recommend that you vote to accept the Plan.

THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.

NO REPRESENTATION CONCERNING THE DEBTORS IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE WHICH ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AS WELL AS THE COMPLEXITY OF THE DEBTORS' BUSINESSES AND FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THIS DISCLOSURE STATEMENT INCLUDES FORWARD LOOKING STATEMENTS BASED LARGELY ON THE DEBTORS' CURRENT EXPECTATIONS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AND ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

THE PLAN PROVIDES FOR RELEASES OF, AND INJUNCTIVE RELIEF TO PROTECT, CERTAIN PERSONS WHO ARE EITHER (1) PROVIDING CONSIDERATION TO THE ESTATES AND REORGANIZED DEBTORS, (2) SUBSTANTIALLY COMPROMISING THEIR CLAIMS, OR (3) WILL BE CRITICAL LENDERS, CUSTOMERS, OR VENDORS OF REORGANIZED DEBTORS. THE PERSONS SO PROTECTED, AND THE SCOPE OF THE RELEASES AND INJUNCTION, ARE DEFINED IN ARTICLE VIII OF THE PLAN AND ARTICLE V HEREOF. IF THE PLAN IS CONFIRMED ALL PERSONS SPECIFIED IN THESE PROVISIONS OF THE PLAN WILL BE RELEASED FROM THE CLAIMS OF THE DEBTORS AND ANY CREDITOR AND PARTY IN INTEREST IN THESE CASES.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

The Debtors are debtors under Chapter 11 of the Code in bankruptcy case(s) pending in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division (the "Bankruptcy Court"). In addition to Celebrity Resorts, LLC, on the Petition Date, thirty five (35) affiliated and related companies of Celebrity Resorts filed bankruptcy petitions. An organizational chart of the debtor entities is available upon request.

As prescribed by the Code and the Rules, Claims asserted against, and equity Interests in, the Debtors are placed into "Classes". The Plan contemplates the substantive consolidation of the Chapter 11 Cases, as further detailed in the Plan. Accordingly, the Plan contains a total of forty-five (45) Classes of Claims as follows: eight (8) Classes of Allowed Secured Claims; one (1) Class of Allowed Unsecured Claims; and thirty-six (36) Classes of Interests. Pursuant to the Plan, on the Effective Date: (i) all assets and all proceeds thereof, and all liabilities of the Debtors will be treated as though the assets and liabilities were merged into the respective reorganized debtors (Holding Co., Development Co., Asset Co., Management Co., and Club Membership Co.)(collectively, the

"Reorganized Debtors")1; (ii) all Disallowed Claims and Claims by and among the Debtors (Intercompany Claims) will receive no distribution under the Plan; (iii) any obligation of any Debtors, and all guarantees thereof executed by one or more of the Debtors, and any Claims in a case of a proponent hereof, filed or to be filed in connection with any such obligation and guarantee will be deemed one Claim against the respective Debtors; (iv) each and every Claim filed in the individual Chapter 11 Case of any of the Debtors will be deemed filed against the respective Reorganized Debtor; and (v) for purposes of determining the availability of the right of set-off under Section 553 of the Bankruptcy Code, the respective Reorganized Debtors shall be treated for purposes of the Plan as one entity so that, subject to the other provisions of Section 553 of the Bankruptcy Code, debts due to any of the respective Debtors may be setoff against the debts of any of the Reorganized Debtors; provided, however, nothing herein shall be deemed to create a right of set off and all such rights are deemed extinguished unless set forth in a timely filed secured claim. The classification of Claims and the treatment of each Class is discussed in detail below. A chart identifying the anticipated Post Confirmation organizational structure is attached hereto as **Exhibit B** and is incorporated herein by reference.

To the extent the legal, contractual, or equitable rights with respect to any Claim or Interest asserted against the Debtors are altered, modified or changed by treatment proposed under the Plan, such Claim or Interest is considered "Impaired," and the holder of such Claim or Interest is entitled to vote in favor of or against the Plan. A Ballot for voting in favor of or against the Plan ("Ballot") will be mailed along with the order approving this Disclosure Statement.

**THE VOTE OF EACH CREDITOR OR INTEREST HOLDER WITH AN IMPAIRED CLAIM OR INTEREST IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE**

---

1 Actual names of the reorganized entities will be provided by Debtors prior to the Confirmation Hearing.

**RECEIVED AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.**

<div style="border:1px solid">

**VOTING DEADLINE**

The last day to vote to accept or reject the Plan is _____, 2010. All votes must be received by the voting agent by 5:00 p.m. (EST) on that day.

</div>

Upon receipt, the Ballots will be tabulated, and the results of the voting will be presented to the Court for its consideration. As described in greater detail in Section IV of this Disclosure Statement, the Code prescribes certain requirements for confirmation of a plan. The Court will schedule a hearing (the "Confirmation Hearing") to consider whether the Debtors have complied with those requirements.

The Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of a plan. Confirmation of a plan over the objection of a Class is sometimes called "cramdown." As described in greater detail in Section IV of this Disclosure Statement, the Debtors have expressly reserved the right to seek "cramdown" in the event all Impaired Classes do not vote in favor of the Plan.

## II. DESCRIPTION OF DEBTORS' BUSINESSES

### A. In General

Celebrity Resorts and its affiliated or related debtors and debtors-in-possession have been engaged in the business of acquiring, developing, managing and operating vacation timeshare resorts in several states since 2001. As of the Petition Date, the Debtors have acquired and collectively own, manage, operate, or have contractual interests in resort properties in twelve (12) different physical locations (the "Resorts") as well as two (2) additional resort properties where the management and marketing rights of Debtor entities are in litigation. The Resorts consist of fully

furnished suites and villas with on-site amenities including clubhouses, pools, saunas, exercise rooms and other location-specific comforts (the "Amenities"). Various components of the Resorts are owned, in part, by the Debtors' development group entities (the "Development Group").

Pursuant to various management agreements, the Debtors' management group (the "Management Group") has the sole and exclusive right and obligation to manage and operate twelve (12) different associations of timeshare owners within various Resorts, but not within all of the Resorts. Additionally, Debtors have management and marketing rights at two (2) other resort properties but the existence and extent of those rights is currently being litigated. The Debtors' Management Group and Development Group, in turn, work with the Debtors' sales, marketing, rental, loan and administrative groups to facilitate the sale and rental of the Resorts' units.

In 2003, the Debtors experienced a large volume of growth. Near the end of 2003, the Debtors acquired the majority of the timeshare assets of Leisure Industries, a NYSE publically traded company, which increased the Debtors' then-existing resort asset portfolio by seven properties located in Florida, Nevada, Colorado, New Jersey, and Hawaii (the "Leisure Resorts"). The timeshares located within the Leisure Resorts were owned by approximately 20,000 private timeshare purchasers called owner families (hereinafter referred to collectively with all other timeshare owners within the Celebrity Resorts family of Resorts as the "Owner Families"). In 2004, the Debtors acquired companies which owned five more properties, located in Daytona Beach, Bellaire Beach and Orlando, Florida; Myrtle Beach, South Carolina; Hawley, Pennsylvania, and the approximately 15,000 vacation club owners within those properties, which were known as American Vacation Resorts. In 2005, Debtors executed management contracts with 6 new timeshare associations in Kissimmee, Lake Buena Vista, and Palm Coast, Florida. From 2006 through 2008, the Debtors and their affiliates expanded their portfolios to include units and management and

marketing contracts in Carson Valley, Nevada; Hanalei Bay, Princeville, Kauai, Hawaii; Las Vegas, Nevada; and Orlando and Clearwater, Florida, and further acquired developer and other rights and assets from resorts that were already part of their vacation network. As of the Petition Date, the Debtors' Development Group owned interests in Resorts located in Florida, New Jersey, Hawaii, Nevada, Pennsylvania and Colorado.

The Debtors' derive revenue from four (4) main sources: (i) servicing of consumer debt for loans made in connection with the purchase of a timeshare interest ("Loan Revenue"); (ii) the rental of vacant timeshare units to the general public ("Rental Revenue"); (iii) the sale of timeshare products to the general public ("Sales Revenue"); and (iv) management and related fees from timeshare associations managed by various debtor entities ("Management Fee Revenue"). As of the Petition Date, the Debtors have approximately 384 employees.

The Debtors ownership is primarily vested with the CEO of all the Debtors, Jared M. Meyers ("Meyers"). Meyers is the authorized designee for purposes of the Chapter 11 bankruptcy proceedings. As CEO, Meyers is responsible for all strategic and management decisions of the Debtors, including acquisition of timeshare properties and expansion of the Debtors' business interests into resort development, sales and marketing, property management, mortgage origination and servicing, vacation clubs and exchange companies.

B.     Significant Developments and Events Leading to Chapter 11 Filing

Over the past two years, the real estate markets in both the United States and Florida have suffered and continue to suffer losses and decreased capital markets unseen in this country since the late 1920's. As a result, consumers have drastically decreased their discretionary spending on luxury items, including vacations. This trend has been so marked as to give rise to a new term - the "staycation," or stay-at-home vacation.

In addition, in September of 2008, the timeshare industry faced an unprecedented decrease in revenue due to the declining credit market. During this decline, Debtors, under the leadership of their chief executive officer, Meyers, attempted to develop and implement a financial strategy to take them through the credit crunch and place them in a more profitable and cash-positive business model, which strategy included ensuring that employees and consultants of the Debtors were paid at a rate commensurate with their experience and productivity.

While the Debtors were implementing this strategy, Neil S. Meyers ("Neil"), the father of Meyers and a consultant to Debtors, demonstrated his disagreement with Meyers' strategy by covertly working with his brother (Meyers' uncle), Steve Meyers, who also served as Debtors' general counsel, ("S. Meyers") to usurp Meyers of his ownership of the Debtors and undermine Meyers' attempts to lead the Debtors through the most tumultuous financial market the timeshare industry had faced in its over thirty (30) year history. This conduct ultimately led to the termination of S. Meyers and the cessation of Debtors obtaining consulting services from Neil. In response, Neil threatened to take actions to intentionally disrupt and destroy the Debtors' business unless Meyers succumbed to several demands. When Meyers, as CEO, refused to comply with those demands, which included destroying the Debtors' organizational documents, ceding 50% control of the Debtors to Neil and entering into inappropriate employment agreements with Neil, S. Meyers and Meyers' brother, Derek Meyers, Neil began to take actions which ultimately forced the Debtors to seek relief through bankruptcy.

Neil's actions included threatening the lives of Meyers (his own son) and outside corporate counsel, Joe Panzl; contacting the IRS with false and libelous information; filing a baseless lawsuit against several of the Debtors on or about December 5, 2008, and thereafter pursuing a litigation strategy aimed not at actually litigating the allegations contained within the compliant, but

instead causing as much havoc as possible on the daily operations of defendants and forcing defendants to incur significant legal fees; refusing to provide various lenders of Debtors with contractually required information; wrongfully challenging loan guaranties; threatening lenders and pressuring lenders through oppressive discovery tactics; and making illegitimate demands on valuable business relationship of Debtors.

Despite the issues outlined above, in 2009 the Debtors' profits increased over 2008 by about $5.6 million. This 2009 profit reduced the overall debt, including affiliated debts, from $37.5 million to $30 million, but did not improve the Debtors' cash flow. Not surprisingly, in addition to the fallout from the conduct described above, the adverse real estate market and general economic conditions have resulted in significant reductions in both timeshare rentals and timeshare sales, and there has been a concurrent increase in default rates by existing Owner Families, all of which have only compounded the problems faced by the Debtors. As such, the Debtors' business has been dramatically impacted as cash flow and revenue have steadily dropped and availability of new capital has been limited. As a consequence, certain Debtors and their affiliates defaulted on several loan obligations, with at least three of the secured lenders threatening to commence legal proceedings. Ultimately, the Debtors determined that it is in the best interest of all parties to seek reorganization under Chapter 11.

C.    Events Subsequent to Chapter 11 Filings.

As of Petition Date, the Debtors owned, managed, operated or had contractual rights to resort properties at twelve (12) Resorts in which various Debtors actively operated, plus had management and marketing rights in two (2) additional resorts, which rights were then in litigation. Since the Petition Date, the Debtors have been continuing to operate their businesses and manage

their properties as debtors-in-possession under Sections 1107(a) and 1108 of the Code. Debtors have maintained a good level of profitability since the Petition Date.

Pursuant to various provisions of the Bankruptcy Code, the Debtors have sought and obtained numerous orders from the Bankruptcy Court intended to facilitate the operations of Debtors. Those orders authorized Debtors to, among other things: (i) use cash collateral subject to liens (Doc. Nos. 33, 156, 184, 282, and 312); (ii) continue their cash management programs, bank accounts, and investment practices (Doc. No. 44); (iii) pay certain prepetition Claims, including Claims of employees for wages, salaries and employee benefits (Doc. No. 35); (iv) honor prepetition customer deposits (Doc. No. 31); and (v) granting a compromise of controversy relating to litigation on one of the Debtor's Nevada resorts (Doc. No. 173), all in order to permit the Debtors to conduct their ongoing business substantially as they did prior to the Petition Date and resolve previously pending disputes.

Mr. Neil Meyers filed an adversary proceeding (Adv. Pro. No. 6:10-ap-00178-ABB) seeking a declaratory judgment as to ownership of the Debtors. Mr. Neil Meyers claims to be the owner of all Debtors and the Debtors dispute such claim. The adversary proceeding is set to be heard by the Bankruptcy Court on December 2 and 3, 2010.

## III.   THE PLAN

**THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF DEBTORS' PLAN. ANY PARTY IN INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

A.      Overview.

All Claims against the Reorganized Debtors shall be classified and treated pursuant to the terms of the Plan. All Claims by the Debtors against any other Debtor shall be waived. As noted more fully below, the Plan contains forty-five (45) Classes of Claims and Interests. There are eight (8) Classes of Secured Claims, one (1) Class of Unsecured Claims, and thirty-six (36) Classes of Interests. Class 1, Class 2 and Class 3 are Unimpaired. All other Classes of Claims or Interests are Impaired.

On the Effective Date, the Plan provides that Holders of Allowed Administrative Claims will be paid in full. Holders of Allowed Priority Claims, if any, will be paid by the respective Reorganized Debtor, with interest, over a period of six years. All Allowed and Impaired Secured Classes of Claims will be given back their respective collateral in full satisfaction of their respective Allowed Claims. All Allowed Unsecured Claims shall be classified in one unsecured class and shall receive a *pro rata* beneficial interest in the Unsecured Note. The Unsecured Note shall be in the amount of $650,000.00 and paid quarterly by the Reorganized Debtor commencing April 15, 2011. Debtors believe that the Unsecured Note will provide a twenty percent (20%) return to Holders of Allowed Unsecured Claims.

Classes 10 through 45 of Interests will be canceled upon the Effective Date; and new equity in the Reorganized Debtors will be issued as stated herein. The Reorganized Debtors shall consist of five reorganized limited liability companies. The Reorganized Debtors shall consist of: (i) Holding Co.; (ii) Management Co.; (iii) Development Co.; (iv) Asset Co.; and (v) Club Membership Co. (exact names to be supplied prior to the Confirmation Hearing). Jared M. Meyers and Kristi Meyers (as tenancy by the entirety) shall own 100% of Holding Co. Holding Co. shall consist of all the assets of the following entities: (i) Celebrity Resorts Holding Company, LLC; (ii) Celebrity Resorts International Management Services, LLC; and (iii) Celebrity Resort International, LP.

Holding Co., in turn, shall own, directly or indirectly, the equity interests in all other Reorganized Debtors. In summary, the Plan contemplates the emergence of the Reorganized Debtors, listed in **Exhibit B** and the continuation of the operation, management and rental of the Resorts located across the United States, with a substantial focus of management and operation of the Resorts.

Management Co. shall consist of all the assets of the following Debtors: (i) Celebrity Resorts Management, LLC; (ii) Celebrity Resorts of Florida Management Company, LLC; (iii) Celebrity Resorts of Colorado Management Company, LLC; (iv) Celebrity Resorts of Nevada Management Company, LLC; (v) Celebrity Resorts of New Jersey Management Company, LLC; (vi) Celebrity Resorts of Las Vegas Management Company, LLC; (vii) Celebrity Resorts Management Services, LLC; (viii) Venezia CE, LLC; (ix) Celebrity Resorts of Clearwater Management Company, LLC; (x) Celebrity Resorts Management Services, Inc.; (xi) Celebrity Resorts of Kauai Management Company, LLC, including all licenses and registrations necessary of managing entities, as well as the assets of other nondebtor, but affiliated and related entities. Management Co. will provide reservation and management services to consumers or Owner Families in connection with all other operating Reorganized Debtors.

Developer Co. shall consist of all the assets of the following Debtors: (i) Celebrity Resorts of Kauai, LLC; (ii) Celebrity Resorts, LLC; (iii) Celebrity Resorts of Brigantine Beach, LLC; (iv) Celebrity Resorts of Indian Shores, LLC; (v) Celebrity Resorts of Lake Buena Vista, LLC; (vi) Celebrity Resorts of Orlando, LLC; (vii) Celebrity Resorts of Palm Coast, LLC; (viii) Celebrity Resorts of Genoa, LLC; (ix) Celebrity Resorts of Steamboat Springs, LLC; (x) Celebrity Resorts of Steamboat Springs-Hilltop, LLC; (xi) Celebrity Resorts of Reno, LLC; (xii) Celebrity Resorts of Nevada Genoa Management, LLC; (xiii) Celebrity Resorts Connections, LLC; (xiv) Celebrity Resorts Reservations, LLC; (xv) Celebrity Resorts, Inc.; (xvi) Celebrity Resorts of Hanalei

Management Company, LLC; (xvii) Celebrity Resorts Sales & Marketing, LLC; and (xviii) The Club of Celebrity Resorts, LLC. Development Co. will own the real property and the respective Resorts and related amenities, will own all developer rights and registrations associated with the Resorts and their operations, will own the sales, marketing and rental rights of the Resorts, together with licensing and registration requirements included therewith, and will otherwise continue to operate as developer for the Resorts.

Asset Co. will own all assets of: (i) Optima Financial Services, LLC; (ii) Hilltop Bar & Grill, LLC; (iii) Lucky Duck Café, LLC; and all pending and known causes of action, including their proceeds, of the following entities: (i) Venzia CE, LLC; (ii) Celebrity Resorts of Clearwater Management Company, LLC; (iii) Celebrity Resorts of Las Vegas Management Company, LLC, as well as additional causes of action owned by other Debtors (which other Debtors, and their assets, excluding causes of action, may be included in Development Co. or Management Co.), which are more fully set forth on the litigation schedule attached hereto as **Exhibit C** ("Litigation Assets").[2] Notwithstanding any other provision contained herein, on the Effective Date, Asset Co. will also own and be the holder of each and every liquor license or similar license, certificate, or registration allowing for the sale of alcohol or alcoholic beverage(s), which any Debtor owns or holds. Lastly, Club Membership Co. shall own all the assets of Celebrity Resorts of Hawley, LLC and shall function similar as an association that will serve consumers who hold contracts for vacation rentals.

    B.    <u>Classification and Treatment of Claims</u>.

        1.    <u>Administrative and Priority Claims</u>.

            a.    <u>Administrative Expense Claims</u>.

---

2  Development Co and Management Co. shall not own the assets or causes of action of Asset Co.

Holders of all Allowed Administrative Expense Claims of the Debtors shall be paid in full on the Effective Date or, if the claim does not become allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Court. However, nothing in this provision of the Plan shall preclude the Debtors from paying a holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claimholder consents to different payment terms.

b.    Priority Tax Claims.

Except to the extent that the Holder and the Reorganized Debtors have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive from the Reorganized Debtors, in full satisfaction of such Claim, payments equal to the Allowed Amount of such Claim. Allowed Priority Tax Claims will be paid based on a six (6) year amortization and maturity with interest at the Confirmation Rate (or in the case of the IRS, I.R.C. §6601 and 6621); the payments will be made quarterly. Payments will commence on the later of the Effective Date, or on such date as a respective Priority Claim becomes Allowed and the Claims will accrue interest at the rate of five percent (5%) per annum with no prepayment penalty.

2.    Secured Claims.

a.    Class 1 - Pinellas County Tax Collector.

Class 1 consists of the Allowed Secured Claim of the Pinellas County Tax Collector ("Pinellas"). The Class 1 Claim is secured by a first priority Lien on the Debtor's personal property owned by Celebrity Resorts of Indian Shores, LLC, d/b/a Celebrity Resorts Indian Shores, which is located at 19607 Gulf Blvd., Indian Shores, Florida (the "Indian Shores Property"). In full satisfaction of its Allowed Secured Claim, Pinellas shall retain its first priority lien on the

personal property located at the Indian Shores Property and shall be paid one hundred percent (100%) of its Allowed Secured Claim in the ordinary course and by the due date as proscribed by Florida law. Class 1 is Unimpaired.

b.    Class 2 - Flagler County Tax Collector.

Class 2 consists of the Allowed Secured Claim of the Flagler County Tax Collector ("Flagler"). The Class 2 Claim is secured by a first priority Lien on the following Debtors' real and personal property owned by Celebrity Resorts of Palm Coast, LLC d/b/a Celebrity Resorts of Palm Coast, which is located at 98 Palm Coast Resort Blvd., Palm Coast, Florida 32137 (the "Palm Coast Property"). In full satisfaction of its Allowed Secured Claim, Flagler shall retain its first priority Lien on the Palm Coast Property and shall be paid one hundred percent (100%) of its Allowed Secured Claims in the ordinary course and by the due date as provided for under Florida law. Class 2 is Unimpaired.

c.    Class 3 - Orange County Tax Collector.

Class 3 consists of the Allowed Secured Claim of the Orange County Tax Collector ("Orange"). The Class 3 Claim is secured by a first priority Lien on the Personal Property owned by Celebrity Resorts Reservations, LLC which is located in Orange County, Florida. In full satisfaction of its Allowed Secured Claim, Orange shall retain its first priority Lien on the Orange County Personal Property and shall be paid one hundred percent (100%) of its Allowed Secured Claim in the ordinary course and by the due date as proscribed by Florida law. Class 3 is Unimpaired.

d.    Class 4 - Farmington Bank

Class 4 consists of the Allowed Secured Claim of Farmington Bank ("Farmington"). The Class 4 Claim is secured by Liens on certain of the Debtors' timeshare

inventory owned by the following entities: (i) Celebrity Resorts of Brigantine Beach, LLC; (ii) Celebrity Resorts of Indian Shores, LLC; (iii) Celebrity Resorts of Orlando, LLC; (iv) Celebrity Resorts of Palm Coast, LLC; (v) Celebrity Resorts of Reno, LLC; (vi) Celebrity Resorts of Steamboat Springs, LLC; and (vii) Celebrity Resorts of Steamboat Springs-Hilltop, LLC (collectively, the "FB Timeshare Inventory").

In full satisfaction of its Allowed Secured Claim, Farmington shall have the FB Timeshare Inventory returned to it, as the indubitable equivalent of its Secured Claim. The value of the FB Timeshare Inventory exceeds the amounts of the Class 4 Claims, and as such, the transfer of the FB Timeshare Inventory back to Farmington shall be in full satisfaction of its Allowed Secured Claim as well as any other Allowed Claim that Farmington may have against the Debtors, and shall further be a release, with prejudice, of any obligation that Jared M. Meyers or any of the Debtors may have to Farmington on any Claim of any kind, including, without limitation, the Allowed Class 4 Claim of Farmington. The transfer to Farmington shall be free and clear of all pre-petition liens and claims but not of the obligation to pay required maintenance, tax assessment and other assessments in accordance with the governing instruments of the timeshare regime where the specific FB Timeshare Inventory is located. Debtors have obtained a valuation of the FB collateral and such will be made available to any Holder of an Allowed Claim who requests such.

e.      Class 5 - Textron Financial Corporation

Class 5 consists of the Allowed Secured Claim of Textron as against the following Debtor entities: (i) Celebrity Resorts, LLC; (ii) Celebrity Resorts of Brigantine Beach, LLC; (iii) Celebrity Resorts of Indian Shores, LLC; (iv) Celebrity Resorts of Lake Buena Vista, LLC; (v) Celebrity Resorts of Orlando, LLC; (vi) Celebrity Resorts of Palm Coast, LLC; (vii) Celebrity Resorts of Steamboat Springs, LLC; (ix) Celebrity Resorts of Steamboat Springs-Hilltop, LLC; and

(x) Celebrity Resorts Management, LLC (the "Textron Debtor Obligors"). The Class 5 Claim is secured by Liens on a timeshare mortgage portfolio, customer notes and accounts receivable related thereto, management contracts, and all products and proceeds of the foregoing, which are owned by the Textron Debtor Obligors (collectively, the "Textron Collateral"). The Class 5 Claim is impaired and shall be entitled to vote to accept or reject the Plan.

On the Effective Date, the applicable Reorganized Debtors and Textron shall enter into and deliver the Implementation Documentation.[3] The salient terms of the treatment of the Class 5 Allowed Secured Claim of Textron, as provided for in the Implementation Documentation, is summarized below:

(1)    <u>Fixing of Textron Claim Amount</u>. Solely for purposes of the Plan and with respect to determining the treatment of Textron's Class 5 Secured Claim, the Class 5 Claim shall be fixed at $10,342,038, <u>plus</u> the aggregate sum of $1,200,000 (representing the aggregate dollar amount of cash collateral utilized by the Debtors during the Chapter 11 cases), <u>plus</u> accrued and accruing interest through and including the Effective Date at the rate of 6.5% per annum. The establishment of the Allowed Amount of the Textron Class 5 Secured Claim shall be without prejudice to Textron's rights as against any non-Debtor third party obligor or guarantor, and all of such additional rights shall be governed by the pre-petition loan documents between Textron and any such third party. Notwithstanding the foregoing, all prepetition personal guarantees and obligations of Jared M. Meyers to Textron are hereby terminated and released, and Jared M. Meyers shall have no personal guaranty or obligation to Textron of any kind except to the limited extend set forth in section 2.g. below. Through and including the Effective Date, Textron shall be permitted to apply excess cash proceeds in any lockbox maintained by and under the control of Textron in partial

---

3    The description contained herein is intended as a summary of the salient terms only, and is subject in all respects to the specific terms and provisions of the Implementation Documentation.

satisfaction of the Class 5 Secured Claim amount, with any Effective Date remaining outstanding balance being defined as the "Textron Investment".

(2) <u>Transfer and Assignment of Textron Collateral</u>. The Implementation Documentation shall provide that upon the occurrence of the Effective Date, the applicable Reorganized Debtors shall transfer, assign and convey to Textron (or its designee) all of the applicable Reorganized Debtors' right, title and interest in and to the existing portfolio of consumer notes receivable and related interval mortgages (which accounts have been designated by the current servicer, Concord Financial, by codes 254, 255, and 777, hereinafter collectively known as the "Portfolio"). From and after the Effective Date, Textron shall be entitled to receive and retain on an exclusive basis all proceeds realized and recovered with respect to the Portfolio, and the Reorganized Debtors shall have no interest in any such proceeds. Anything herein to the contrary notwithstanding, upon the occurrence of the Effective Date Textron shall release its existing lien and security interest in and upon any and all consumer notes receivable and related interval mortgages that are greater than 120 days delinquent; <u>provided that</u> following the occurrence of the Effective Date, Textron shall transfer, convey and assign to the applicable Reorganized Debtor all of its right, title and interest in and to any and all additional consumer notes receivable and related interval mortgages that are included as part of the Portfolio that may become greater than 120 days delinquent at any time after the Effective Date; <u>provided further that</u> in the event the Reorganized Debtors are in default with respect to the treatment of the Textron Secured Claim and/or under the terms of the forward financing line to be provided by Textron following the Effective Date, then Textron shall not be required or obligated to transfer its right, title and interest in and to any and all additional delinquent consumer notes receivable and related interval mortgages that are included as

part of the Portfolio until such time as the Reorganized Debtors cure any existing and continuing default(s).

(3) <u>Backstop Obligation</u>. The Reorganized Debtors shall provide a "backstop" of the Portfolio post-confirmation performance in order to insure that Textron realizes a return of not less than 100% of the Textron Investment principal and interest calculated at a fixed rate of 6.5% per annum (the "Portfolio Rate"). Each month as cash is generated by the note payments received within the Portfolio, such cash shall be applied as follows: first, to pay the any applicable Portfolio servicing fees; second, to interest calculated at the rate of 4.25% (the "Initial Backstop Rate") on the then-existing outstanding Textron Investment principal balance; and third, in partial reduction of the Textron Investment principal. Each month the difference in interest accrued at the Portfolio Rate and interest paid at the Initial Backstop Rate (the "Interest Differential") shall accrue interest free and be paid as set forth below.

Each monthly Interest Differential shall accrue interest free until such time as the Textron Investment Principal (the "Principal Payoff") has been paid in full. Upon Principal Payoff, then the cumulative accrued Interest Differential shall be totaled (said sum being the "Total Interest Differential") and paid in equal monthly installments by amortizing the Total Interest Differential straight line over 24 months at no interest. Payment of the Total Interest Differential shall begin upon the earlier of (i) the month immediately following the Principal Payoff or (ii) January 1, 2018 and shall be made by applying all cash generated by the note payments received within the Portfolio. In the event payment begins January 1, 2018 and Principal Payoff has not yet occurred, then each subsequent monthly Interest Differential(s) shall be added as an additional monthly payment(s) extending the end of the amortization period of the Total Interest Differential repayment period. Payments shall be applied as follows: first, to pay any applicable

Portfolio servicing fees; second, to pay the required monthly payment. In the event the cash generated by the Portfolio in any given month is insufficient to make the then required monthly payment, then any shortfall shall be treated in the manner applicable to a "Shortfall" as described below.

Commencing December 31, 2011, and each December 31 thereafter during any year in which any Textron Investment principal remains outstanding (each a "Measurement Date"), Textron and the Reorganized Debtors shall calculate the "Calculated Borrowing Base Rate" and compare it to the "Required Borrowing Base Rate". The Required Borrowing Base Rate for each Measurement Date is as follows:

    i.   December 31, 2011: 125.00%
    ii.   December 31, 2012: 115.00%
    iii.   December 31, 2013: 105.00%
    iv.   December 31, 2014: 100.00%
    v.   December 31, 2015 and each Measurement Date thereafter: 100.00%

For purposes of the Plan, the Calculated Borrowing Base Rate shall be derived on each Measurement Date by using the End of Month Loan / Investment Balance as of December 31 for the given Measurement Date as the numerator and the End of Month Portfolio Balance as of December 31 for the same year as the denominator. The result of such calculation, expressed as a percent, is the "Calculated Borrowing Base Rate" for the given Measurement Date.

If the Required Borrowing Base Rate is less than the Calculated Borrowing Base Rate on any given Measurement Date (a "Shortage"), then such Shortage shall be corrected by January 31 of the following calendar year in the following manner:

    i.   Textron shall receive management fee revenue from the Pledged Contracts in such amount as is necessary to correct the Shortage; or

    ii.   In the event management fee revenue from the Pledged Contracts is insufficient to correct the Shortage, then Textron may require the

Reorganized Debtors to transfer, convey and assign to Textron (or its designee) all of their right, title and interest in and to one or more of the Pledged Contracts, upon which transfer and assignment the Reorganized Debtors shall be entitled to receive a credit against the Shortfall in an amount equal to the agreed upon Pledge Contract Release Price set forth in Exhibit D to this Disclosure Statement. Textron's selection of a Pledged Contract to correct any Shortfall shall occur in the following order of priority:

First, Reno;
Second, Hilltop;
Third, Oaks;
Fourth, Villas; and
Fifth, Spas.

Alternatively, in the Reorganized Debtors' sole and absolute discretion, the Reorganized Debtors may choose to correct any Shortage from its own cash flow.

(4)    <u>Pledge of Management Contracts</u>. Upon the occurrence of the Effective Date, the Reorganized Debtors shall pledge, and grant Textron a first priority duly perfected security interest and lien upon the following management contracts: Spas, Villas, Oaks, Reno, & Hilltop (individually a "Pledged Contract", and collectively the "Pledged Contracts"). The Reorganized Debtors shall be able to cause Textron to release its lien in and upon a Pledged Contract(s) by making payment to Textron of the applicable Pledged Contract Release Price as set forth in **Exhibit D** to this Disclosure Statement. The Reorganized Debtors may choose in their discretion to release one or more of such Pledged Contracts and in any order by paying the applicable Release Price. Upon payment by the Reorganized Debtors of the applicable Release Price, the applicable Pledged Contract shall be released from Textron's lien and shall no longer constitute a Pledged Contract.

(5)    <u>Return of Portfolio</u>. Upon final payment of (i) the Textron Investment, (ii) interest thereon at the Initial Backstop Rate, and (iii) the Total Interest Differential, Textron shall convey title to any remaining notes receivable due under the Portfolio back to the

Reorganized Debtors, Textron shall have no further right to any of the payments received thereunder, and the Reorganized Debtors shall have no further obligation to Textron; provided, however, that if at the time of the final payment of the Total Interest Differential the forward financing line being provided by Textron is in monetary default, Textron shall not be obligated to convey title to the remaining notes receivable under the Portfolio unless and until the Reorganized Debtors cures such monetary default. Upon such cure, Textron shall then immediately convey title as set forth herein.

(6) <u>Textron Association Oversight</u>. Textron shall be granted limited oversight and monitoring rights with respect to certain HOAs, including the right to receive financial statements and other information concerning the subject HOAs.

(7) <u>Limited Guaranty</u>. Meyers shall provide a limited guaranty as to the Textron Investment to ensure that he assists the Reorganized Debtors (i) to properly transition the Pledged Contract(s) in the event Textron determines to take title to one or more of them as provided herein and (ii) to provide any agreed upon reporting requirements. Such guaranty will come into effect upon the occurrence of one or more of the "Trigger Events" set forth in the Implementation Documentation.

(8) <u>Textron Release</u>. As further consideration for its contributions to the Debtors and to the Reorganized Debtors, Textron shall be released from all Release Claims as defined in the Plan and as more fully set forth in the Plan.

f. <u>Class 6 - Fifth Third Bank</u>

Class 6 consists of the Allowed Secured Claim of Fifth Third Bank ("Fifth Third"). The Class 6 Claim is secured by Liens on a certain mortgage portfolio consisting of One Thousand Two Hundred Seventy One (1,271) mortgages (the "Fifth Third Collateral"). Debtors that have pledged collateral to Fifth Third include the following entities: (i) Celebrity Resorts of

Lake Buena Vista, LLC; (ii) Celebrity Resorts of Orlando, LLC; (iii) Celebrity Resorts Management Services, LLC; and (iv) Celebrity Resorts Management, LLC. In full satisfaction of its Class 6 Allowed Secured Claim, Debtors shall transfer all of their interest in the Fifth Third Collateral to Fifth Third as the indubitable equivalent of such Secured Claim. The value of the Fifth Third Collateral exceeds the Allowed Amount of the Class 6 Claims, and, thus, Fifth Third shall not have an Allowed Unsecured Claim. Fifth Third shall also waive and release Jared M. Meyers and the Debtors of and from any and all Claims and obligations of any kind, including without limitation the Class 6 Claim of Fifth Third. Debtors have received a valuation of the Fifth Third Collateral and such will be made available to the Holder of any Allowed Claim who requests such.

g.  Class 7 - RBC Bank.

Class 7 consists of the Allowed Secured Claim of RBC Bank ("RBC"). The Class 7 Claim is secured by a Lien on real property owned by Celebrity Resorts of Palm Coast, LLC, d/b/a Celebrity Resorts of Palm Coast, which is located at 98 Palm Coast Resort Blvd., Palm Coast, Florida 32137 (the "Palm Coast Property"). In full satisfaction of the Class 7 Allowed Secured Claim, RBC shall have the Palm Coast Property transferred to it as its indubitable equivalent of such Secured Claim. The transfer shall be free and clear of all liens, claims, and encumbrances except for existing *ad valorem* real property taxes. The value of the Palm Coast Property exceeds the Allowed Amount of the Class 7 Claim, and, thus, RBC shall not have an Allowed Unsecured Claim. RBC shall also waive and release Jared M. Meyers and the Debtors of and from any and all Claims and obligations of any kind, including without limitation the Class 7 Claim of RBC.

h.  Class 8 - Grand Venezia COA, Inc.

Class 8 consists of the Allowed Claim of Grand Venezia COA, Inc. ("GVI"). GVI is the holder of a potential secured claim in respect of management services provided

by Celebrity Resorts of Clearwater Management Company, LLC ("CMC") and Venezia CE, LLC ("VE LLC"). In full satisfaction of the Allowed Class 8 Claim, GVI, CMC and VE, LLC will comply with the terms of the Mediation Report set forth in **Exhibit G** herein.

      3.     Unsecured Claims.

      Class 9 - General Unsecured Claims.

Class 9 consists of the Allowed Claims of all Unsecured Creditors for each of the Debtors. In full satisfaction of their Allowed Unsecured Claims, Holders of Class 9 Claims shall receive a *Pro Rata* beneficial interest in the Unsecured Note. The Unsecured Note shall be in the face amount of $650,000.00 and be paid quarterly without interest. Debtors believe that the Unsecured Note will represent twenty percent (20%) of the Allowed Unsecured Claims. To the extent Debtors receive any net proceeds from the Causes of Action, as listed on **Exhibit C,** such will be paid by Asset Co. to the Holders of Allowed Class 9 Claims and the payments will reduce, dollar for dollar, the amount of the Unsecured Note. The Unsecured Note will be executed by Asset Co. but guaranteed by all Reorganized Debtors. Commencing on the April 15, 2011, Asset Co. shall make quarterly payments on the Unsecured Note to Holders of Allowed Class 9 Claims. The Unsecured Note shall mature five (5) years from the initial payment date of April 15, 2011.

      4.     Interests: All Equity Interests.

      a.     Class 10 - Celebrity Resorts, LLC.

Class 10 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the

Class 10 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

b.      <u>Class 11 - Celebrity Resorts of Brigantine Beach, LLC</u>.

Class 11 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Brigantine Beach, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Brigantine Beach, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 11 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

c.      <u>Class 12 - Celebrity Resorts of Indian Shores, LLC</u>.

Class 12 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Indian Shores, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Indian Shores, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 12 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

d.      <u>Class 13 - Celebrity Resorts of Kauai, LLC</u>.

Class 13 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Kauai, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Kauai, LLC shall be canceled and of no further force and effect. Accordingly,

the Holders of the Class 13 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

e.     Class 14 - Celebrity Resorts of Lake Buena Vista, LLC.

Class 14 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Lake Buena Vista, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Lake Buena Vista, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 14 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

f.     Class 15 - Celebrity Resorts of Orlando, LLC.

Class 15 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Orlando, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 15 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

g.     Class 16 - Celebrity Resorts of Palm Coast, LLC.

Class 16 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Palm Coast, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Palm Coast, LLC shall be canceled and of no further force and effect.

Accordingly, the Holders of the Class 16 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

        h.      <u>Class 17 - Celebrity Resorts of Reno, LLC.</u>

        Class 17 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Reno, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Reno, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 17 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

        i.      <u>Class 18 - Celebrity Resorts of Steamboat Springs, LLC.</u>

        Class 18 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Steamboat Springs, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Steamboat Springs, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 18 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

        j.      <u>Class 19 - Celebrity Resorts of Steamboat Springs-Hilltop, LLC.</u>

        Class 19 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Steamboat Springs-Hilltop, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized

equity interests in Celebrity Resorts of Steamboat Springs-Hilltop, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 19 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

k.  Class 20 - Celebrity Resorts Management, LLC.

Class 20 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts Management, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts Management, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 20 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

l.  Class 21 - Celebrity Resorts of Clearwater Management Company, LLC.

Class 21 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Clearwater Management Company, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Clearwater Management Company, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 21 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

m.     Class 22 - Celebrity Resorts of Colorado Management Company, LLC.

Class 22 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Colorado Management Company, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Colorado Management Company, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 22 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

n.     Class 23 - Celebrity Resorts of Florida Management Company, LLC.

Class 23 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Florida Management Company, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Florida Management Company, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 23 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

o.     Class 24 - Celebrity Resorts of Genoa, LLC.

Class 24 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Genoa, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Genoa, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 24 Interests, except to the extent that they are entitled to Distribution or as

otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

p.      <u>Class 25 - Celebrity Resorts of Hanalei Management Company, LLC.</u>

Class 25 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Hanalei Management Company, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Hanalei Management Company, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 25 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

q.      <u>Class 26 - Celebrity Resorts of Hawley, LLC.</u>

Class 26 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Hawley, LLC ("Hawley"). The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Hawley, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 26 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors. Mr. Meyers, as ultimate owner of the Class 26 interests has agreed to contribute the assets of Hawley to the Reorganized Debtors to fund operations. There are no Allowed Claims related to Hawley and, as such, the proceeds of the Hawley Sale (approximately $500,000.00) would otherwise be distributed to equity owners.

r.    Class 27 - Celebrity Resorts of Las Vegas Management Company, LLC.

Class 27 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Vegas Management Company, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Las Vegas Management Company, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 27 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

s.    Class 28 - Celebrity Resorts of Nevada Management Company, LLC.

Class 28 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Nevada Management Company, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Nevada Management Company, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 28 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

t.    Class 29 - Celebrity Resorts of New Jersey Management Company, LLC.

Class 29 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of New Jersey Management Company, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of New Jersey Management Company, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 29 Interests,

except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

u.    Class 30 - Celebrity Resorts Holding Company, LLC.

Class 30 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts Holding Company, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts Holding Company, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 30 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

v.    Class 31 - Celebrity Resorts Sales & Marketing, LLC.

Class 31 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts Sales & Marketing, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts Sales & Marketing, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 31 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

w.    Class 32 - Optima Financial Services, LLC.

Class 32 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Optima Financial Services, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Optima Financial Services, LLC shall be canceled and of no further force and effect. Accordingly,

the Holders of the Class 32 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

x.      Class 33 - The Club of Celebrity Resorts, LLC.

Class 33 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in The Club of Celebrity Resorts, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in The Club of Celebrity Resorts, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 33 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

y.      Class 34 - Venezia CE, LLC.

Class 34 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Venezia CE, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Venezia CE, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 34 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

z.      Class 35 - Celebrity Resorts International Management Services, LLC.

Class 35 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts International Management Services, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts International Management Services, LLC shall be

canceled and of no further force and effect. Accordingly, the Holders of the Class 35 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

aa.      <u>Class 36 - Celebrity Resorts Reservations, LLC</u>.

Class 36 consists of any and all membership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts Reservations, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts Reservations, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 36 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

bb.      <u>Class 37 - Celebrity Resorts International, LP</u>.

Class 37 consists of any and all partnership interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts International LP. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts International, LP shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 37 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

cc.      <u>Class 38 - Celebrity Resorts, Inc</u>.

Class 38 consists of any and all interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts, Inc. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts, Inc. shall

be canceled and of no further force and effect. Accordingly, the Holders of the Class 38 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

dd.   Class 39 - Celebrity Resorts Management Services, LLC.

Class 39 consists of any and all interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts Management Services, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts Management Services, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 39 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

ee.   Class 40 - Celebrity Resorts of Nevada Genoa Management, LLC.

Class 40 consists of any and all interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Nevada Genoa Management, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Nevada Genoa Management, LLC. shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 40 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

ff.   Class 41 - Celebrity Resorts Management Services, Inc.

Class 41 consists of any and all interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts Management Services, Inc. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in

Celebrity Resorts Management Services, Inc. shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 41 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

gg. <u>Class 42 - Celebrity Resorts Connections, LLC</u>.

Class 42 consists of any and all interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts Connections, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts Connections, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 42 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

hh. <u>Class 43 - Hilltop Bar & Grill, LLC</u>.

Class 43 consists of any and all interests, common stock, stock options, and warrants currently issued or authorized in Hilltop Bar & Grill, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Hilltop Bar & Grill, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 43 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

ii. <u>Class 44 - Lucky Duck Café, LLC</u>.

Class 44 consists of any and all interests, common stock, stock options, and warrants currently issued or authorized in Lucky Duck Café, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Lucky Duck Café, LLC

shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 44 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

        jj.       <u>Class 45 - Celebrity Resorts of Kauai Management Company, LLC</u>

Class 45 consists of any and all interests, common stock, stock options, and warrants currently issued or authorized in Celebrity Resorts of Kauai Management Company, LLC. The Class is impaired as, upon the Effective Date, all currently issued or authorized equity interests in Celebrity Resorts of Kauai Management Company, LLC shall be canceled and of no further force and effect. Accordingly, the Holders of the Class 45 Interests, except to the extent that they are entitled to Distribution or as otherwise provided elsewhere in the Plan, shall not have an ownership interest in the Reorganized Debtors.

C.      <u>Means of Implementation</u>.

1.      <u>Business Operations and Cash Flow</u>.

The Plan contemplates that the Reorganized Debtors will continue their timeshare resort management and rental business for the Resorts which are currently owned, in part, by the Debtors' Development Group. The Plan contemplates that the Reorganized Debtors will give back to RBC, Textron, Fifth Third and Farmington their collateral as the indubitable equivalent of such Secured Claims. This transfer will allow the Reorganized Debtors to eliminate a significant amount of debt, continue to operate on a positive cash flow basis, while reducing their expenses related to the annual assessment charges for the Resort properties, all while improving overall customer satisfaction. The Reorganized Debtors anticipate use of a consolidated cash management system. The Debtors believe cash flow from the continued operation and management of the Resorts

will be sufficient to meet all required Plan payments. A true and correct copy of the Reorganized Debtors three (3) year cash flow projections are attached hereto as **Exhibit E.**

2.      Substantive Consolidation.

In light of the Debtors' unique corporate structure and conduct of their business affairs, the Debtors recognized early on that an important issue in these Chapter 11 cases would be whether the Debtors' assets and liabilities should be substantively consolidated. The Plan proposes, and its terms embody, the substantive consolidation of the Debtors as set forth herein. Substantive consolidation is an equitable remedy that the Bankruptcy Court may order. In general, substantive consolidation can greatly affect creditor recovery because it pools the assets and liabilities of entities with different debt-to-assets ratios. Therefore, affected parties often enter into protracted and expensive litigation related to substantive consolidation. Based on the facts of these Chapter 11 cases, and applicable case law on the subject, the Debtors believe they would prevail in any litigation over the issue of substantive consolidation. The Debtors intend to file a legal memorandum in support of substantive consolidation prior to Confirmation.

The Primary factor in a substantive consolidation analysis (as set forth by the 11th Circuit) is whether creditors relied on the separate credit of specific debtors. To the extent creditors looked to the entire enterprise, substantive consolidation is often the appropriate result. In the instant matter, Debtors assert that creditors looked to the generic "Celebrity Resorts" as opposed to any specific Debtor. Moreover, much of the trade debt is booked at the management level as a common paymaster and, as such, these creditors have a legal obligation from an entity with few assets. Substantive consolidation will benefit most, if not all, unsecured creditors. Substantive consolidation is also warranted due to a common accounting system with numerous inter-company transfers. Creditors are directed to the official claims register and schedules for a review of Claims

by each respective Debtor. However, Debtors have not identified any creditor group that is harmed by substantive consolidation.

     3.    <u>Funds Generated During Chapter 11</u>.

Funds generated from operations until the Effective Date will be used for Plan Payments and general operations; however, cash on hand as of Confirmation from all Debtors shall be available for Administrative Expenses.

     4.    <u>Management and Control of Reorganized Debtors</u>.

     a.    <u>Management</u>. The operations of the Reorganized Debtors shall be overseen by its managers and employees, which shall be substantially the same as the management staff as the Debtors. The powers of the managers of the Reorganized Debtors shall be substantially the same as the management team of the Debtors. Mr. Jared Meyers shall remain as CEO of all Reorganized Debtors. Mr. Meyers will also serve as the Manager of Holding Co., and Holding Co. shall in turn serve as Manager of all other Reorganized Debtors. Jared M. Meyers' salary shall not exceed the level existing within one year prior to the Petition Date.

     b.    <u>Officers</u>. The Officers of the Respective Reorganized Debtors shall be the same as the Officers of the Debtors as of the Petition Date. Mr. Meyers shall be the manager of Holding Co.

     5.    <u>Membership Interests in Reorganized Debtors</u>.

After Confirmation but prior to the Effective Date, Reorganized Debtors shall be formed consistent with the terms set forth herein and as stated *supra*.

D.     Other Provisions.

1.     Leases and Executory Contracts.

The Plan provides that the Debtors shall have through and including the Effective Date within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, then such unexpired lease or executory contract shall be deemed rejected.  All parties to rejected contracts or lease shall have thirty (30) days from Confirmation to file a rejection damages claim.  It is the position of the Debtors that the executory contracts listed in the respective Schedules of Executory Contracts filed pursuant to Rule 1007, are the only executory contracts to which any of the Debtors were a party on the Petition Date.  Creditors are directed to the respective Schedule G's for such contracts.

2.     Procedures For Resolving Disputed Claims.

a.     Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Debtors shall have the exclusive right to make and file objections to all Claims prior to the Effective Date and the Reorganized Debtors shall have the exclusive right to make and file objections to Claims after the Effective Date.  Debtors have not performed an extensive claims analysis but the estimated claims in Class 9 are based on Debtors own records and schedules.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that any Debtor had immediately prior to the commencement of the Chapter 11 Cases, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtors and the Reorganized Debtors shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that any Debtor had immediately prior to the commencement of the Chapter 11 Cases as if the Chapter 11 Cases had not been commenced.

      b.    <u>Estimation of Claims</u>.

Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c.    Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan. As soon as such Disputed Claim becomes Allowed, such will be paid in accordance with the Plan.

d.    Payments and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid from the Reorganized Debtors' Cash and Assets, such that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed by the Reorganized Debtors or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

e.    Allowance of Claims and Interests.

(i).    *Disallowance of Claims*

According to the Plan, all Claims held by Entities against whom any Debtor has obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the related Debtor by that Entity are turned over to such Debtor.

(ii).    *Allowance of Claims*

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Chapter 11 Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim or Equity Interest.

f.    Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

g.   Causes of Action

In addition to the Causes of Action listed in **Exhibit C**, Debtors may also possess causes of action under 11 U.S.C. §§ 547 and 548. Debtors have not yet completed such analysis; however, Debtors have found no evidence of transfers to Mr. Jared Meyers which would violate either statute. Debtors have determined that Mr. Neil Meyers may be liable for certain payments in 2007 and 2008 under 11 U.S.C. §§ 548. Debtors believe most trade payments were pursuant to ordinary course terms and, as such, §§ 547 is not a significant avenue for funds recovery.

3.   Effect of Confirmation

a.   Cancellation of Equity.  On the Effective Date, all of the Debtors' outstanding Preferred and Common Stock, Membership Interests, and Partnership Interests will be extinguished. The equity in the Reorganized Debtors will be distributed as set forth in the Plan.

b.   Authority to Effectuate the Plan.  Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order will act as an order modifying the Debtors' by-laws such that the provisions of this Plan can be effectuated. The Reorganized Debtors shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

c.   Post-Confirmation Status Report.  Pursuant to the Plan, within 120 days of the entry of the Confirmation Order, the Debtors will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special

notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

## IV. CONFIRMATION

A. <u>Confirmation Hearing</u>.

Section 1128 of the Code requires the Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing. Any objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the following persons, at least seven (7) days prior to Confirmation Hearing:

**Counsel for the Debtors**:

R. Scott Shuker, Esquire
Justin M. Luna, Esquire
Latham, Shuker, Eden & Beaudine, LLP
390 N. Orange Avenue, Suite 600
Orlando, Florida 32801

**Debtors**:

Celebrity Resorts, LLC
Attn: Jared M. Meyers
8451 Palm Parkway
Orlando, Florida 32836

**United States Trustee:**

135 West Central Blvd.
Suite 620
Orlando, Florida 32801

B.    Financial Information Relevant to Confirmation.

Attached as Exhibits to the original of the Disclosure Statement filed with the Court, and incorporated herein, are the following:

(i) **Exhibit E** is a copy of Debtors' financial projections for the first three years of Plan Payments. The projections indicate that the Reorganized Debtors' operational cash flow will be sufficient to service the required Plan Payments at a debt level as described herein using an anticipated Effective Date of **December 31, 2010**. The projections and other financial information has been provided by and prepared by the Debtors' management. The projections may not be relied upon as a guaranty or other assurance of the actual results that will occur. These projections are based upon a variety of estimates and assumptions which may not be realized. **Exhibit E-1** lists the basic assumptions for the projections. The projections are based on assumptions existing as of September 2010 and have not materially changed; and

(ii) **Exhibit F** is a copy of Debtors' Chapter 7 liquidation analysis ("Liquidation Analysis") establishing that Creditors of Debtors will fair materially poorer in the event the Debtors are forced into Chapter 7 as compared to the Plan. Additionally, **Exhibit F-1** indicates the liquidation analysis by various groupings as set forth therein.

C.    Confirmation Standards.

For a plan of reorganization to be confirmed, the Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of the Code. Section 1129 of the Code also imposes requirements that at least one class of Impaired Claims accept a plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Court shall confirm a plan only if it finds that all of the requirements enumerated in Section 1129 of the Code have been met. Debtors believe that the Plan satisfies all of the requirements for Confirmation.

      1.     <u>Best Interests Test</u>.

Before the Plan may be confirmed, the Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each holder of an Allowed Claim or Interest of such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if Debtors were, on the Effective Date, liquidated under Chapter 7 of the Code. Debtors believe that satisfaction of this test is established by the Liquidation Analysis.

To determine what holders of Claims and Equity Interests would receive if Debtors were liquidated, the Court must determine how the assets and properties of Debtors would be liquidated and distributed in the context of a Chapter 7 liquidation case.

Debtors' costs of liquidation under Chapter 7 would include the fees payable to a trustee in bankruptcy and to any additional attorneys and other professionals engaged by such trustee and any unpaid expenses incurred by Debtors during the Chapter 11 Cases, including compensation of attorneys and accountants. The additional costs and expenses incurred by a trustee in a Chapter 7 liquidation could be substantial and would decrease the possibility that Unsecured Creditors and holders of Equity Interests would receive meaningful distributions. The foregoing types of Claims arising from Chapter 7 administration and such other Claims as may arise in Chapter 7 or result from the pending Chapter 11 Cases would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Claims of Unsecured

Creditors. Liquidation in Chapter 7 might substantially delay the date at which Creditors would receive any Payment.

Debtors have carefully considered the probable effects of liquidation under Chapter 7 on the ultimate proceeds available for distribution to Creditors and holders of Equity Interests, including the following:

a.     the possible costs and expenses of the Chapter 7 trustee or trustees;

b.     the possible adverse effect on recoveries by Creditors under Chapter 7 due to reduced sale prices for Debtors' assets caused by the forced Chapter 7 liquidation; and

c.     the possible substantial increase in Claims which would rank prior to or on a parity with those of Unsecured Creditors.

2.     Financial Feasibility.

The Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtors unless the liquidation is proposed in the Plan. As reflected in **Exhibit E,** Debtors believe that core operations will generate sufficient cash flow to make all Plan Payments as noted herein. Based upon the financial projections, Debtors assert that the Plan is feasible and Confirmation is not likely to be followed by further financial reorganization.

3.     Acceptance by Impaired Classes.

The Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such plan, with the exception described in the following section. A Class of Claims has accepted the Plan if the Plan has been accepted by Creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class who vote to accept or to reject the Plan.

A Class of Interests has accepted the Plan if the Plan has been accepted by holders of Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such Class that vote to accept or reject the Plan. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not Impaired under a Plan is deemed to have accepted such Plan; solicitation of acceptances with respect to such Class is not required. A Class is Impaired unless (i) the legal, equitable and contractual rights to which the Claim or Interest entitles the holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date the holder of the Claim or Interest receives on account of such claim or interest, Cash equal to the Allowed Amount of such Claim or, with respect to any Interest, any fixed liquidation preference to which the holder is entitled.

4.    Confirmation Without Acceptance by all Impaired Classes; "Cramdown."

The Code contains provisions that enable the Court to confirm the Plan, even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one Impaired Class of Claims. Section 1129(b)(1) of the Code states:

> "Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly,

and it is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

> **DEBTORS BELIEVE THAT, IF NECESSARY, THEY WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE CODE WITH RESPECT TO THE NON-CONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

D.    Consummation.

The Plan will be consummated and Payments made if the Plan is Confirmed pursuant to a Final Order of the Court, the Effective Date occurs, and the Reorganized Debtors and applicable parties reach agreement on any required documents. It will not be necessary for the Reorganized Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the Code.

## V.    RELEASES AND INJUNCTIONS

A.    Jared M. Meyers

Jared M. Meyers is the principal shareholder, member, or partner, and the ultimate controlling persons, of each of the Debtors. Jared M. Meyers have been involved with the acquisition and development of each of the Debtors' properties and business operations since their inception. As a consequence of their intricate involvement with the Debtors' business development and financial affairs, Jared M. Meyers is obligated on numerous direct, limited, or conditional guarantees of the Debtors' financial obligations, and as a result is liable under those contractual undertakings as accommodation parties for the Debtors or as direct obligations on account of credit obtained for the benefit of the Debtors on substantially all of the Debtors' business and operational indebtedness. Additionally, by reason of his status as officers, directors, managers, and control persons of the Debtors' business activities, Jared M. Meyers has been joined in numerous litigations

and claims arising from the Debtors' operations. Jared M. Meyers estimates his potential exposure on contractual recourse liability for the Debtors' business obligations and other Debtor related non-contractual claims to exceed **$15,000,000.00.** Conversely, Jared M. Meyers has represented to the Debtors and to many of the secured lenders within the Chapter 11 cases, under terms of confidentiality, that recourse by creditors to their combined balance sheets would yield less than a 1% distribution to those creditors who seek recourse against Jared M. Meyers. A copy of Jared M. Meyers' personal financial statement is available upon request of Debtors' counsel and execution of a confidentiality agreement by recourse creditors holding Allowed Claims that are not subject to a bona fide dispute as to amount or entitlement.

Through the efforts of Jared M. Meyers, the assets can be managed and achieve a cash flow that will provide a clear economic benefit to creditors. The Debtors believe that Jared M. Meyers has and is continuing to contribute significant value to the Debtors' estates, and will continue to contribute value to the Reorganized Debtors

On the Effective Date of the Plan, Jared M. Meyers shall make or continue to make the following substantial contributions to the Reorganized Debtors: (i) waive any and all Claims he has directly or indirectly against the Debtors, which said claim amounts exceed $2,325,000.00; (ii) ownership interests and assets of Celebrity Resorts of Hawley, LLC which, upon information, has no Allowed Claims, although certain claims have been filed in the Hawley case Debtors assert such are not proper claims of this entity; (iii) ownership interests in the following Debtors: Celebrity Resorts Reservations, LLC, Celebrity Resorts Nevada Genoa Management, LLC and Celebrity Resorts Connections, LLC, which based on a five year cash flow analysis has a value of approximately $15,000,000.00; (iv) a waiver of indemnification rights pertaining to the releases discussed *infra* and *supra*; and (v) the funds to be delivered to Venezia CE, LLC which would otherwise be distributed

to Jared M. Meyers. The Debtors estimate that Jared M. Meyers' total contributions to the Debtors and the Plan exceed **$18,500,000.00** in monetary amounts alone. In consideration of the substantial contributions made and to be made by Jared M. Meyers, the Plan contemplates the provision to Jared M. Meyers of broad third-party releases and injunctions of pursuit against Jared M. Meyers of claims arising out of and deriving from the business operations and financial affairs of the Debtors or direct guarantees executed by Jared M. Meyers (the "Released Parties"). The third-party releases and injunctions will be omnibus in nature, excepting therefrom only liabilities of Jared M. Meyers: (i) owing to holders of claims against the Debtors but arising from nondebtor transactions of a purely personal or family nature; and (ii) the limited obligations to Textron as set forth infra.

B.    Releases/Injunctions

The Plan is premised upon the releases contained below. Debtors assert the releases are being given as consideration for the accommodations provided by Jared M. Meyers and Textron under the Plan and are fair consideration for, as the case may be, funds contributed, generous loan terms, or valuable services. The Debtors do not believe that any Claims or Causes of Action against Jared M. Meyers or Textron have any merit. The Debtors further believe that unless the settlement is binding on all parties through confirmation of the Plan, protracted and costly litigation would ensue, distributions to Creditors would be substantially delayed and the Debtors would not be restructured and reorganized.

From and after the Confirmation Date, the Releases described **Article VIII.G.1 in the Plan and Article V herein shall become effective**, and all Holders of Claims and Interests shall be enjoined from commencing or continuing any Released Claims against any Released Parties.

1.    Rule 3016(c) Declaration. In accordance with the requirements of Rule 3016(c), the provisions of this Article V operate to specifically release Jared M. Meyers and Textron

from all liabilities associated with its business interests in the Debtors and in these cases. By reason of his contribution of work, expertise, and knowledge of the Debtors' affairs, and the contributions of Jared M. Meyers is critical to the successful reorganization of the Debtors. Furthermore, the contributions of Textron are critical to the successful reorganization of the Debtors. The Debtors believe that without the protection of such injunctions, the Plan would have less likelihood of success.

Within this Section, ***bold print and italics*** are used to identify the exact nature of releases and to identify the parties subject to the release.

2.    <u>General Releases by Holders of Claims or Interests</u>. *On the Effective Date, in consideration for the obligations of the Debtors, its managers, members, directors and officers, and Reorganized Debtors under the Plan, and the cash, stock, warrants and other contracts, instruments, releases, written agreements or other documents to be entered into or delivered in connection with the Plan, and all consideration distributed under the Plan, **all Holders of Claims and Interests** will be deemed to forever release, waive, discontinue and discharge the Released Parties of and from all existing and future claims, obligations, proceedings, suits, judgments, damages, demands, debts, rights, Causes of Action, objections to the Claims, and liabilities (other than the right to enforce Reorganized Debtors' or Released Parties' obligations under the Plan and the contracts, instruments, releases, written agreements or other documents to be entered into or delivered in connection with the Plan) that are based in whole or in part on any act, failure to act, omission, transaction or other occurrence taking place on or prior to the Confirmation Date, including without limitation any claim such Holder has, had, or may have against the Released Parties, and including but not limited to all claims arising from the business activities, loans to, or contracts with, or the operations and activities of the Debtors, excepting therefrom only: (i) the personal*

*liability of Jared M. Meyers to the Holder of a Claim against the Debtors, or any of them, arising solely for personal or family purposes that were completely unrelated to the business of any of the Debtors, including mortgage liabilities on personal residences, personal loans (but not loans for which the proceeds were applied to or contributed to operations of the Debtors); and (ii) the post-confirmation obligations to Textron as set forth supra (the "Jared M. Meyers Excepted Liabilities").*

      3.    <u>General Releases by Holders of Claims or Interests</u>. *On the Effective Date, and in consideration of the contributions of Jared M. Meyers, and conditioned upon Jared M. Meyers waiving, with prejudice his Allowed Claims against any of the Debtors, the support by Jared M. Meyers for approval of the Plan, and the cooperation of Jared M. Meyers in the operation of the Reorganized Debtors,* **the Debtors and Reorganized Debtors** *shall be deemed to have released, waived, and discharged Jared M. Meyers from any and all claims, obligations, suits, judgments, damages, rights, causes of action, and liabilities whatsoever, including without limitations any claim or cause of action pursuant to Section 542 through 554 of the Bankruptcy Code, inclusive, whether known or unknown, foreseen or unforeseen, existing or hereafter arising in law, equity, or otherwise, and based in whole or in part upon any act or omission, transaction, even, or other occurrence taking place on or prior to the Effective Date.*

      4.    <u>Injunction Related to Releases</u>.

      a.    *Except as expressly provided in the Plan or to otherwise enforce the terms of the Plan, as of the Confirmation Date,* **all Persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan,** *to the fullest extent permitted by applicable law, are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities or terminated Interests or rights: (i) commencing or*

*continuing in any manner any action or proceeding against the Debtors, Reorganized Debtors, or their respective property, other than to enforce any right pursuant to the Plan to a distribution; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtors or Reorganized Debtors, other than as permitted pursuant to (i) above; (iii) creating, perfecting, or enforcing any lien or encumbrance against the Debtors, Reorganized Debtors or their respective property, except as permitted under the Plan; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or Reorganized Debtors; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.*

*b.        Except as expressly provided in the Plan or to otherwise enforce the terms of the Plan or the obligation of the Released Parties under the Plan, as of the Confirmation Date, **all Persons that have held, currently hold or may hold a Claim or other debt or liability that are released, waived or discharged pursuant to the Plan, including pursuant to Article V hereof,** to the fullest extent permitted by applicable law, are permanently enjoined from taking any actions against any released Person or entity or its property on account of such released claims, demands, rights, causes of action or liabilities including, without limitation:  (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released entity; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.*

5. <u>Police Power</u>.

Nothing in this Article V shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtors for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to Section 1141 of the Code.

6. <u>Revocation and Withdrawal of this Plan</u>.

The Debtors reserve the right to withdraw this Plan at any time before entry of the Confirmation Order. If (i) the Debtors revoke and withdraw this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

7. <u>Modification of Plan</u>.

The Debtors may seek to amend or modify this Plan in accordance with §1127(b) of the Bankruptcy Code, or remedy and defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtors, may issue, execute, deliver or file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

## VI. **ALTERNATIVE TO THE PLAN**.

If the Plan is not confirmed and consummated, Debtors believe that the most likely alternative is a sale of the Debtors or a liquidation of the Debtors under Chapter 7 or 11 of the Code.

In a liquidation or sale, Debtors believe the deficiency claims from the secured lenders could be as much as $15,000,000.00, and, as such, the pool of Allowed Unsecured (Class 9) Claims would be increased and the dividend to such group greatly diminished, if not extinguished entirely. Debtors believe that liquidation of all real and personal property in a Chapter 7 scenario would dramatically reduce the total amount available to Creditors. In a case under Chapter 7 of the Code, a trustee would be elected or appointed to liquidate the assets of Debtors for distribution to Creditors in accordance with the priorities established by the Code. Debtors' analysis of the probable recovery to Creditors and holders of equity Interest is set forth in the Liquidation Analysis.

## VII. CONCLUSION.

Debtors recommend that holders of Claims and Interests vote to accept the Plan.

**DATED** this 19th day of November 2010 in Orlando, Florida.

/s/ Justin M. Luna
R. Scott Shuker
Florida Bar No. 984469
Justin M. Luna
Florida Bar No. 0037131
**LATHAM, SHUKER, EDEN &**
**BEAUDINE, LLP**
390 N. Orange Avenue, Suite 600
Orlando, Florida 32801
Telephone: (407) 481-5800
Facsimile: (407) 481-5801
Attorneys for Debtors

## LIST OF DEBTORS UNDER JOINT PLAN OF REORGANIZATION

| ENTITY | BKRY CASE NO. |
|---|---|
| Celebrity Resorts, LLC (CR) | 6:10-bk-3550 |
| Celebrity Resorts of Brigantine Beach, LLC (CRBB) (F/K/A Celebrity Resorts of New Jersey, LLC) | 6:10-bk-3551 |
| Celebrity Resorts of Indian Shores, LLC (CRIS) | 6:10-bk-3552 |
| Celebrity Resorts of Kauai, LLC (CRK) | 6:10-bk-3553 |
| Celebrity Resorts of Lake Buena Vista, LLC (CRLBV) | 6:10-bk-3554 |
| Celebrity Resorts of Orlando, LLC (CRO) | 6:10-bk-3555 |
| Celebrity Resorts of Palm Coast, LLC (CRPM) | 6:10-bk-3556 |
| Celebrity Resorts of Reno, LLC (CRRN) | 6:10-bk-3557 |
| Celebrity Resorts of Steamboat Springs, LLC (CRSS) | 6:10-bk-3558 |
| Celebrity Resorts of Steamboat Springs-Hilltop, LLC (CRSS-H) | 6:10-bk-3559 |
| Celebrity Resorts Management Services, LLC (CRMS) | 6:10-bk-3560 |
| Celebrity Resorts Management, LLC (CRM) | 6:10-bk-3561 |
| Celebrity Resorts of Clearwater Management Company, LLC (CRCWMC) | 6:10-bk-3562 |
| Celebrity Resorts of Colorado Management Company, LLC (CRCMC) | 6:10-bk-3563 |
| Celebrity Resorts of Florida Management Company, LLC (CRFMC) | 6:10-bk-3564 |
| Celebrity Resorts of Genoa, LLC (CRG) | 6:10-bk-3565 |
| Celebrity Resorts of Hanalei Management Company, LLC (CRHMC) | 6:10-bk-3566 |
| Celebrity Resorts of Hawley, LLC (CRH) | 6:10-bk-3567 |
| Celebrity Resorts of Kauai Management Company, LLC (CRKMC) | 6:10-bk-3568 |
| Celebrity Resorts of Las Vegas Management Company, LLC (CRLVMC) | 6:10-bk-3569 |

**EXHIBIT "A"**

| ENTITY | BKRY CASE NO. |
|---|---|
| Celebrity Resorts of Nevada Genoa Management, LLC (CRNGM)<br><br>Celebrity Resorts of Nevada Management Company, LLC (CRNMC) | 6:10-bk-3570<br>6:10-bk-3571 |
| Celebrity Resorts of New Jersey Management Company, LLC (CRNJMC) | 6:10-bk-3572 |
| Celebrity Resorts Connections, LLC (CRC) | 6:10-bk-3573 |
| Celebrity Resorts Holding Company, LLC (CRHC) | 6:10-bk-3574 |
| Celebrity Resorts Reservations, LLC (CRR) | 6:10-bk-3575 |
| Celebrity Resorts Sales & Marketing, LLC (CRSM) (f/k/a Florida Property Development, LLC) | 6:10-bk-3576 |
| Hilltop Bar & Grill, LLC (HBG) | 6:10-bk-3577 |
| Lucky Duck Café, LLC | 6:10-bk-3578 |
| Optima Financial Services, LLC (OFS) | 6:10-bk-3579 |
| The Club of Celebrity Resorts, LLC (CCR) | 6:10-bk-3580 |
| Venezia CE, LLC (VCE) | 6:10-bk-3581 |
| Celebrity Resorts International Management Services, LLC (CRIMS) | 6:10-bk-3582 |
| Celebrity Resorts International, LP (CRI) | 6:10-bk-3583 |
| Celebrity Resorts Management Services, Inc.(CRMSI) | 6:10-bk-3584 |
| Celebrity Resorts, Inc.(CR-INC) | 6:10-bk-3585 |

**EXHIBIT "A"**

# LIST OF DEBTORS AND APPLICABLE REORGANIZED DEBTORS

| ENTITY | BKRY CASE NO | REORGANIZED DEBTOR |
|---|---|---|
| Celebrity Resorts, LLC (CR) | 6:10-bk-3550 | Development Co. |
| Celebrity Resorts of Brigantine Beach, LLC (CRBB) (F/K/A Celebrity Resorts of New Jersey, LLC) | 6:10-bk-3551 | Development Co. |
| Celebrity Resorts of Indian Shores, LLC (CRIS) | 6:10-bk-3552 | Development Co. |
| Celebrity Resorts of Kauai, LLC (CRK) | 6:10-bk-3553 | Development Co. |
| Celebrity Resorts of Lake Buena Vista, LLC (CRLBV) | 6:10-bk-3554 | Development Co. |
| Celebrity Resorts of Orlando, LLC (CRO) | 6:10-bk-3555 | Development Co. |
| Celebrity Resorts of Palm Coast, LLC (CRPM) | 6:10-bk-3556 | Development Co. |
| Celebrity Resorts of Reno, LLC (CRRN) | 6:10-bk-3557 | Development Co. |
| Celebrity Resorts of Steamboat Springs, LLC (CRSS) | 6:10-bk-3558 | Development Co. |
| Celebrity Resorts of Steamboat Springs-Hilltop, LLC (CRSS-H) | 6:10-bk-3559 | Development Co. |
| Celebrity Resorts Management Services, LLC (CRMS) | 6:10-bk-3560 | Management Co. |
| Celebrity Resorts Management, LLC (CRM) | 6:10-bk-3561 | Management Co. |
| Celebrity Resorts of Clearwater Management Company, LLC (CRCWMC) | 6:10-bk-3562 | Management Co. |
| Celebrity Resorts of Colorado Management Company, LLC (CRCMC) | 6:10-bk-3563 | Management Co. |
| Celebrity Resorts of Florida Management Company, LLC (CRFMC) | 6:10-bk-3564 | Management Co. |
| Celebrity Resorts of Genoa, LLC (CRG) | 6:10-bk-3565 | Development Co. |
| Celebrity Resorts of Hanalei Management Company, LLC (CRHMC) | 6:10-bk-3566 | Development Co. |
| Celebrity Resorts of Hawley, LLC (CRH) | 6:10-bk-3567 | Club Membership Co. |
| Celebrity Resorts of Kauai Management Company, LLC (CRKMC) | 6:10-bk-3568 | Management Co. |

| ENTITY | BKRY CASE NO | REORGANIZED DEBTOR |
|---|---|---|
| Celebrity Resorts of Las Vegas Management Company, LLC (CRLVMC) | 6:10-bk-3569 | Management Co. |
| Celebrity Resorts of Nevada Genoa Management, LLC (CRNGM) | 6:10-bk-3570 | Development Co. |
| Celebrity Resorts of Nevada Management Company, LLC (CRNMC) | 6:10-bk-3571 | Management Co. |
| Celebrity Resorts of New Jersey Management Company, LLC (CRNJMC) | 6:10-bk-3572 | Management Co. |
| Celebrity Resorts Connections, LLC (CRC) | 6:10-bk-3573 | Development Co. |
| Celebrity Resorts Holding Company, LLC (CRHC) | 6:10-bk-3574 | Holding Co. |
| Celebrity Resorts Reservations, LLC (CRR) | 6:10-bk-3575 | Development Co. |
| Celebrity Resorts Sales & Marketing, LLC (CRSM)  (f/k/a Florida Property Development, LLC) | 6:10-bk-3576 | Development Co. |
| Hilltop Bar & Grill, LLC (HBG) | 6:10-bk-3577 | Asset Co. |
| Lucky Duck Café, LLC | 6:10-bk-3578 | Asset Co. |
| Optima Financial Services, LLC (OFS) | 6:10-bk-3579 | Asset Co. |
| The Club of Celebrity Resorts, LLC (CCR) | 6:10-bk-3580 | Development Co. |
| Venezia CE, LLC (VCE) | 6:10-bk-3581 | Management Co. |
| Celebrity Resorts International Management Services, LLC (CRIMS) | 6:10-bk-3582 | Holding Co. |
| Celebrity Resorts International, LP (CRI) | 6:10-bk-3583 | Holding Co. |
| Celebrity Resorts Management Services, Inc.(CRMSI) | 6:10-bk-3584 | Management Co. |
| Celebrity Resorts, Inc.(CR-INC) | 6:10-bk-3585 | Development Co. |

## SCHEDULE OF ASSET CO. LITIGATION ASSETS

| Case Name | Case No. | Date Filed | Court |
|---|---|---|---|
| *Celebrity Resorts Management Services, LLC v. The Club at Star Island, Inc.* | 2009-CA-020012-O | 6/23/2009 | Ninth Judicial Circuit, Orange County, FL |
| *Celebrity Resorts Holding Company, LLC, et al. v. Frederick W. Pauzar, et al.* | Not Yet Filed | N/A | TBD |
| *Celebrity Resorts of Las Vegas Management Company, LLC, et al v. Las Vegas Cay Club Homeowners Association, Inc. et al.* | 2008-CA-018278-O | 7/30/2008 | Ninth Judicial Circuit, Orange County, FL |
| *Optima Financial Services, LLC v. Nevada Meridian, LLC* | 2007-CA-017501-O | 12/13/2007 | Ninth Judicial Circuit, Orange County, FL |

## ALL CAUSES OF ACTION AND PROCEEDS OF THE FOLLOWING ENTITIES

| ENTITY | BKRY CASE NO. |
|---|---|
| Celebrity Resorts of Clearwater Management Company, LLC (CRCMC) | 6:10-bk-3562 |
| Celebrity Resorts of Las Vegas Management Company, LLC (CRLVMC) | 6:10-bk-3569 |
| Optima Financial Services, LLC | 6:10-bk-3579 |
| Venezia CE, LLC | 6:10-bk-3581 |

## SUMMARY OF AFOREMENTIONED CAUSES OF ACTION

***Celebrity Resorts Management Services, LLC v. The Club at Star Island, Inc.*** - Celebrity Resorts of Management Services, LLC ("CRMS") sued The Club of Star Island, Inc. ("Star Island") for overpayment of approximately $234,910.00 for amenities that were never used by guests of Celebrity Resorts (the "Funds"). The Funds were paid and retained by Star Island. CRMS sued Star Island under breach of implied contract and unjust enrichment legal theories. CRMS' action against Star Island has been consolidated in the case styled: *The Club at Star Island v. Celebrity Resorts of Orlando, LLC and Celebrity Resorts of Florida Management Company, LLC*, Case No. 2009-CA-013129-O, Division 34, In the Circuit Court for The Ninth Judicial Circuit, In and For Orange County, Florida.

***Celebrity Resorts Holding Company, LLC, et al. v. Frederick W. Pauzar, et al.***- Celebrity Resorts Holding Company, LLC ("CRH") has claims in excess of $23,600,000.00 against Frederick W. Pauzar ("Pauzar") and AHH Kissimmee, LLC which arise out of

misrepresentations made in connection with the sale of stock in American Holiday Holdings, Inc. from Pauzar to CRH.

***Celebrity Resorts of Las Vegas Management Company, LLC, et al v. Las Vegas Cay Club Homeowners Association, Inc. et al.*** - Celebrity Resorts of Las Vegas Management Company, LLC and Celebrity Resorts Sales and Marketing, LLC brought action against the Las Vegas Cay Club Homeowners' Association, Inc., Flamingo Palms Villas, LLC, and Desert Tides, LLC for specific performance under certain marketing and management contracts with the Defendants. The Defendants to the action failed to comply with the terms of those agreements by failing and continuing to fail to allow the plaintiffs to conduct their duties under the respective agreements and failed to pay plaintiffs the amounts due under the same.

***Optima Financial Services, LLC v. Nevada Meridian, LLC*** - Optima Financial Services, LLC sued Nevada Meridian, LLC for breach of contract and quantum meruit for Defendant's failure to pay Optima the amount of $34,259.28 for servicing and collecting the Defendant's loan portfolio from the period of May 1, 2004 through July 31, 2005 in accordance with the parties' contract.

## Release of Pledged Management Contracts

| Management Contract | Release Price from Confirmation until 1/31/2014 | Release Price from 2/1/2014 until 1/31/2015 | Release Price from 2/1/2015 and thereafter |
|---|---|---|---|
| Spas | $655,968.43 | $491,976.00 | $378,402.00 |
| Oaks | 385,138.96 | 288,854.00 | 222,171.00 |
| Villas | 220,399.35 | 165,300.00 | 127,140.00 |
| Hilltop | 297,640.39 | 223,230.00 | 171,697.00 |
| Reno | 440,852.87 | 330,640.00 | 247,661.00 |
| **TOTAL** | **$2,000,000.00** | **$1,500,000.00** | **$1,147,071.00** |

**EXHIBIT "D"**

**Celebrity Resorts**
December 2010 - 2011 Cash Flow Budget

9/26/2010

Budgets have not been reviewed by tax advisors

| | December 2010 Fcst | January Budget | February Budget | March Budget | April Budget | May Budget | June Budget | July Budget | August Budget | September Budget | October Budget | November Budget | December Budget | Total 2010-2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Front Line Net Sales (@$510,000/wk avg) | | 100,000 | | 175,000 | 187,500 | 168,750 | 168,750 | 250,000 | 250,000 | 165,000 | 187,500 | 200,000 | 225,000 | 2,077,500 |
| In-House Net Sales (@$55,000 avg) | | | 150,000 | 200,000 | 250,000 | 258,750 | 258,750 | 350,000 | 350,000 | 265,000 | 287,500 | 90,000 | 100,000 | 970,000 |
| Total Net Sales | | | 150,000 | 245,000 | 267,500 | 258,750 | 258,750 | 350,000 | 350,000 | 265,000 | 287,500 | 290,000 | 325,000 | 3,047,500 |
| Net Weeks Developer | | 4 | | 6 | 20 | 6 | 6 | 26 | 26 | 20 | 22 | 290,000 | 8 | 76 |
| Net weeks HOA | | 11 | | 18 | 27 | 26 | 6 | 35 | 36 | 27 | 29 | 29 | 33 | 229 |
| Total Weeks Sold | | 15 | | 25 | 27 | 26 | | 35 | 26 | 27 | 22 | 24 | 33 | 305 |
| Down Payment @ 35% | | 52,500 | | 85,750 | 93,625 | 90,563 | 90,563 | 122,500 | 122,500 | 92,750 | 105,625 | 101,500 | 113,750 | 1,066,625 |
| 75% advance | | 73,125 | | 119,438 | 130,425 | 126,141 | 126,141 | 170,625 | 170,625 | 129,138 | 143,136 | 141,375 | 158,438 | 1,485,656 |
| MF collected - developer | | | | 7,635 | 12,406 | 13,622 | 13,177 | 13,177 | 17,824 | 17,432 | 13,495 | 14,641 | 14,788 | 138,443 |
| MF collected HOA | | | | 2,546 | 4,159 | 4,541 | 4,392 | 4,392 | 5,941 | 5,941 | 4,498 | 4,880 | 4,923 | 46,214 |
| Management Fees | 2,227,223 | | | | | | | | | | | | | 2,227,223 |
| Shared Services Fees | | | | | | | | | | | | | | 223,479 |
| Reno | 290,800 | 18,623 | 18,623 | 18,623 | 18,623 | 18,623 | 18,623 | 18,623 | 18,623 | 18,623 | 18,623 | 18,623 | 18,623 | 223,479 |
| RW1 | 10,600 | | | | | | | | | | | | | 10,600 |
| RW2 | 48,000 | 3,126 | 3,126 | 3,126 | 3,126 | 3,126 | 3,126 | 3,126 | 3,126 | 3,126 | 3,126 | 3,136 | 3,136 | 85,511 |
| Big Villas | | 3,930 | 3,930 | 3,930 | 3,930 | 3,930 | 3,930 | 3,930 | 3,930 | 3,930 | 3,930 | 3,930 | 3,930 | 43,230 |
| Big Inn | 37,000 | 16,757 | 16,757 | 16,757 | 16,757 | 16,757 | 16,757 | 16,757 | 16,757 | 16,757 | 16,757 | 16,757 | 16,757 | 201,083 |
| Oaks | 90,700 | 12,375 | 12,375 | 12,375 | 12,375 | 12,375 | 12,375 | 12,375 | 12,375 | 12,375 | 12,375 | 12,375 | 12,375 | 185,502 |
| Spas | 35,400 | 4,311 | 4,311 | 4,311 | 4,311 | 4,311 | 4,311 | 4,311 | 4,311 | 4,311 | 4,311 | 4,311 | 4,311 | 142,435 |
| Steamboat | 35,400 | 14,007 | 14,007 | 14,007 | 14,007 | 14,007 | 14,007 | 14,007 | 14,007 | 14,007 | 14,007 | 14,007 | 14,007 | 203,489 |
| Hilltop | 17,500 | 10,193 | 10,193 | 10,193 | 10,193 | 10,193 | 10,193 | 10,193 | 10,193 | 10,193 | 10,193 | 10,193 | 10,193 | 265,415 |
| Villas @ 18V | 36,000 | | | | | | | | | | | | | 36,000 |
| Total Shared Services Fees | 290,800 | 83,323 | 83,323 | 83,323 | 83,323 | 83,323 | 83,323 | 83,323 | 83,323 | 83,323 | 83,323 | 83,323 | 83,323 | 1,290,674 |
| Florida Club Revenue | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 702,000 |
| Association Payroll Reimb. | 638,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 638,000 | 6,174,000 |
| Rental Revenue | 500,000 | 185,000 | 462,487 | 508,250 | 355,676 | 297,250 | 400,272 | 466,950 | 341,394 | 250,760 | 273,294 | 250,689 | 341,999 | 4,545,843 |
| S&M Program Receipts | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 1,950,000 |
| Owner Rental Costs Clear Water | 22,510 | | | | | | | | | | | | | |
| Concord Collections | | 89,000 | 89,000 | 89,000 | 89,000 | 89,000 | 82,000 | 82,000 | 75,000 | 70,000 | 60,000 | 60,000 | 60,000 | 994,000 |
| Hawley Proceeds | 60,000 | 475,000 | | | | | | | | | | | | 475,000 |
| Merchant Hold Release | | | | | | | | | | | | | 300,000 | 300,000 |
| Misc. Deposits | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 260,000 |
| Total Cash Collections | 1,579,170 | 3,608,482 | 1,410,435 | 1,545,985 | 1,418,666 | 1,354,189 | 1,449,867 | 1,804,993 | 1,467,127 | 1,275,785 | 1,325,392 | 1,276,848 | 1,939,200 | 21,655,879 |
| **Operating Expenses** | | | | | | | | | | | | | | |
| Payroll | 462,381 | 311,254 | 311,254 | 311,254 | 311,254 | 311,254 | 311,254 | 462,381 | 311,254 | 311,254 | 311,254 | 311,254 | 462,381 | 4,499,683 |
| Association Payroll | 638,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 638,000 | 426,000 | 426,000 | 426,000 | 426,000 | 638,000 | 6,174,000 |
| Administrative G&A | 500,000 | 185,000 | | | | | | | | | | | | 685,000 |
| Administrative Claims | 50,000 | | | | | | | | | | | | | 50,000 |
| Developer Commissions | | | | | | | | | | | | | | |
| Strategic Dev Commissions | 22,510 | 93,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 1,105,000 |
| Owner Rental Costs Clear Water | 22,510 | 38,660 | 38,660 | 38,660 | 38,660 | 15,410 | 38,660 | 22,160 | 24,410 | 22,810 | 22,810 | 22,910 | 22,910 | 369,830 |
| Concord | 20,000 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 277,500 |
| Warehouse rent | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 62,400 |
| Homesharing @ 50% | 15,440 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 364,000 |
| W3C / Audio/ Liability / M&H Insurance | 15,449 | 15,445 | 15,445 | 15,445 | 15,445 | 15,445 | 15,445 | 15,445 | 15,449 | 15,449 | 15,449 | 15,449 | 15,449 | 362,451 |
| Credit Card Fees | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 61,600 |
| Roadband Expense | 9,400 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 81,400 |
| Phone system maintenance | 7,500 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 6,000 | 79,500 |
| Software expense | 15,000 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 286,600 |
| Telephone/Blackberry | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 130,000 |
| Utilities | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 10,000 | 65,000 |
| Copiers | 25,000 | 25,000 | | | | | | | | | | | | 25,000 |
| Consultants | | | | | | | | | | | | | | |
| Sales/Marketing Expense @ 60% | | 90,000 | 90,000 | 147,000 | 160,500 | 155,250 | 155,250 | 210,000 | 210,000 | 159,000 | 172,500 | 174,000 | 195,000 | 1,828,500 |
| Developer Obligation | 2,480,874 | | | | | | | | | | | | | 2,480,874 |
| MF Payback to HOA | 37,600 | 2,546 | 4,159 | 2,546 | 4,159 | 4,392 | 4,392 | 4,392 | 5,941 | 5,941 | 4,498 | 4,880 | 4,923 | 46,214 |
| Unencumbered Inventory payment* | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 451,200 |
| Rental Expense to association | 27,965 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 488,400 |
| Resort fees to associations | 30,000 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 102,965 |
| Rental Sales/Use Tax | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 390,000 |
| Provision for Taxes | | 500,000 | | | | | | | | | | | | 500,000 |
| Other Expenses | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 650,000 |
| Total Operating Expenses | 2,682,365 | 3,817,837 | 1,236,963 | 1,273,160 | 1,820,773 | 1,352,816 | 1,296,605 | 1,730,482 | 1,336,154 | 1,283,604 | 1,328,211 | 1,297,593 | 1,681,763 | 23,528,317 |
| Beginning Cash Balance | 807,441 | 304,306 | 294,951 | 478,423 | 751,248 | 349,140 | 350,764 | 504,026 | 578,466 | 709,439 | 701,570 | 698,750 | 677,565 | |
| Collections | 1,579,170 | 3,608,482 | 1,410,435 | 1,545,985 | 1,418,666 | 1,354,189 | 1,449,867 | 1,804,993 | 1,467,127 | 1,275,785 | 1,325,392 | 1,276,848 | 1,939,200 | 1,325,211 |
| Expenditures | (2,082,305) | (3,617,837) | (1,226,963) | (1,273,160) | (1,820,773) | (1,352,816) | (1,296,605) | (1,730,482) | (1,336,154) | (1,283,604) | (1,328,211) | (1,297,593) | (1,681,763) | 1,325,211 |
| Ending Cash | 304,306 | 294,951 | 478,423 | 751,248 | 349,140 | 350,764 | 504,026 | 578,466 | 709,439 | 701,570 | 698,750 | 677,565 | 935,003 | |

* estimated at $3,250,000 @20% quarterly over 5 years beginning 4/15/2011

EXHIBIT "E"

# Celebrity Resorts
## 2012 Cash Flow Budget

Budgets have not been reviewed by tax advisors

9/28/2010

| | January Budget | February Budget | March Budget | April Budget | May Budget | June Budget | July Budget | August Budget | September Budget | October Budget | November Budget | December Budget | Total 2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Front Line Net Sales (@$50,000 avg) | 210,000 | 290,000 | 290,000 | 390,000 | 300,000 | 300,000 | 400,000 | 400,000 | 400,000 | 330,000 | 300,000 | 330,000 | 3,670,000 |
| In House Net Sales (@$55,000 avg) | 90,000 | 90,000 | 120,000 | 120,000 | 120,000 | 120,000 | 130,000 | 130,000 | 120,000 | 120,000 | 100,000 | 100,000 | 1,330,000 |
| Total Net Sales | 300,000 | 380,000 | 390,000 | 440,000 | 420,000 | 420,000 | 530,000 | 530,000 | 410,000 | 450,000 | 300,000 | 430,000 | 5,000,000 |
| Net Weeks Developer | 23 | 29 | 10 | 33 | 32 | 40 | 40 | 53 | 31 | 45 | 23 | 32 | 375 |
| Net weeks HOA | 8 | 8 | 10 | 11 | 11 | 11 | 13 | 13 | 10 | 8 | 23 | 11 | 125 |
| Total Weeks sold | 30 | 38 | 39 | 44 | 42 | 42 | 53 | 53 | 41 | 45 | 30 | 43 | 500 |
| Down Payments @ 85% | 105,000 | 133,000 | 136,500 | 154,000 | 147,000 | 147,000 | 185,500 | 185,500 | 143,500 | 157,500 | 105,000 | 150,500 | 1,750,000 |
| 75% estimate | 146,250 | 185,259 | 190,125 | 214,500 | 204,750 | 204,750 | 258,375 | 258,275 | 199,875 | 219,375 | 146,250 | 209,625 | 2,437,500 |
| MF collected - developer | 14,768 | 15,278 | 19,352 | 19,881 | 22,427 | 21,389 | 21,389 | 26,290 | 26,290 | 29,379 | 22,916 | 13,278 | 247,896 |
| MF collected HOA | 4,923 | 5,093 | 6,451 | 6,620 | 7,469 | 7,130 | 7,130 | 8,997 | 8,997 | 6,960 | 7,639 | 5,093 | 82,499 |
| Management Fees | 2,140,026 | | | | | | | | | | | | 2,140,026 |
| Reno | 18,029 | 18,029 | 18,029 | 18,029 | 18,029 | 18,029 | 18,029 | 18,029 | 18,029 | 18,029 | 18,029 | 18,029 | 216,343 |
| RW2 | 3,005 | 3,005 | 3,005 | 3,005 | 3,005 | 3,005 | 3,005 | 3,005 | 3,005 | 3,005 | 3,005 | 3,005 | 36,054 |
| Big Villas | 3,008 | 3,008 | 3,008 | 3,008 | 3,008 | 3,008 | 3,008 | 3,008 | 3,008 | 3,008 | 3,008 | 3,008 | 36,096 |
| Big Inn | 15,893 | 15,893 | 15,893 | 15,893 | 15,893 | 15,893 | 15,893 | 15,893 | 15,893 | 15,893 | 15,893 | 15,893 | 190,715 |
| Club | 11,910 | 11,910 | 11,910 | 11,910 | 11,910 | 11,910 | 11,910 | 11,910 | 11,910 | 11,910 | 11,910 | 11,910 | 142,925 |
| Spas | 4,162 | 4,162 | 4,162 | 4,162 | 4,162 | 4,162 | 4,162 | 4,162 | 4,162 | 4,162 | 4,162 | 4,162 | 49,940 |
| Steamboat | 14,052 | 14,052 | 14,052 | 14,052 | 14,052 | 14,052 | 14,052 | 14,052 | 14,052 | 14,052 | 14,052 | 14,052 | 168,623 |
| Hilltop | 2,076 | 2,076 | 2,076 | 2,076 | 2,076 | 2,076 | 2,076 | 2,076 | 2,076 | 2,076 | 2,076 | 2,076 | 24,909 |
| Total Shared Services Fees | 72,134 | 72,134 | 72,134 | 72,134 | 72,134 | 72,134 | 72,134 | 72,134 | 72,134 | 72,134 | 72,134 | 72,134 | 865,695 |
| Florida Club Revenue | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 648,000 |
| Association Payroll Reimb. | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 638,000 | 5,536,000 |
| Rental Revenue | 312,330 | 508,736 | 559,119 | 391,244 | 326,975 | 440,299 | 533,597 | 376,105 | 290,406 | 300,623 | 376,199 | 150,000 | 4,597,420 |
| SS&A Program Receipts | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 1,800,000 |
| Concord Collections | 82,000 | 89,000 | 82,000 | 82,000 | 82,000 | 82,000 | 82,000 | 82,000 | 82,000 | 82,000 | 82,000 | 82,000 | 984,000 |
| Misc. Deposits | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 240,000 |
| Total Cash Collections | 3,534,430 | 1,658,489 | 1,722,680 | 1,597,358 | 1,519,735 | 1,624,701 | 2,002,123 | 1,653,201 | 1,420,932 | 1,497,471 | 1,306,697 | 1,750,828 | 21,276,545 |
| **Operating Expenses** | | | | | | | | | | | | | |
| Payroll | 322,148 | 322,148 | 322,148 | 322,148 | 322,148 | 322,148 | 322,148 | 322,148 | 322,148 | 322,148 | 322,148 | 322,148 | 4,178,658 |
| Association Payroll | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 5,136,000 |
| Strata Broker Commissions | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 1,095,000 |
| Owner Rental Costs Clear Water | 38,660 | 38,660 | 38,660 | 22,500 | 15,410 | 38,660 | 22,160 | 24,410 | 22,910 | 22,910 | 22,910 | 22,910 | 346,920 |
| Concord | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 257,500 |
| Warehouse rent | 4,800 | 28,000 | 28,000 | 4,800 | 28,000 | 28,000 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 49,940 |
| Health Insurance @ 50% | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 336,000 |
| W/C / Auto/ / liability/ D&O Insurance | 15,449 | 15,449 | 15,449 | 15,449 | 15,449 | 15,449 | 15,449 | 15,449 | 15,449 | 15,449 | 15,449 | 15,449 | 238,002 |
| Credit Card Fees | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Breakeven payment | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 60,000 |
| Phone system maintenance | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 180,000 |
| Software expense | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 180,000 |
| Telephone/Blackberry | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 218,400 |
| Utilities | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| Copiers | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| Consultants | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| Sales/Marketing Expense @ 60% | 180,000 | 228,000 | 234,000 | 264,000 | 252,000 | 252,000 | 318,000 | 348,000 | 246,000 | 270,000 | 180,000 | 258,000 | 3,000,000 |
| Developer Obligation | 2,005,093 | | | | | | 337,138 | | | | | | 2,342,231 |
| MF Payback to HOA | 4,923 | 5,093 | 6,451 | 6,620 | 7,469 | 7,130 | 7,130 | 8,997 | 8,997 | 6,960 | 7,639 | 5,093 | 82,499 |
| Unsecured Creditor payback* | | 5,093 | 6,451 | 6,620 | 7,469 | 7,130 | 8,997 | 8,997 | 8,997 | 6,960 | 7,639 | 5,093 | 82,499 |
| Resort Fees to associations | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 451,200 |
| Rental Expense to associations | 6,875 | 6,875 | 6,875 | 6,875 | 6,875 | 6,875 | 6,875 | 6,875 | 6,875 | 6,875 | 6,875 | 6,875 | 82,500 |
| Rental Use taxes | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 396,000 |
| Provision for Taxes | | | | | | | | | | | | | 60,000 |
| Other Expenses | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| Total Operating Expenses | 3,373,997 | 1,384,574 | 1,378,583 | 1,941,253 | 1,467,013 | 1,410,631 | 2,198,366 | 1,461,729 | 1,388,229 | 1,442,692 | 1,320,871 | 1,764,741 | 20,520,459 |
| Beginning Cash balance | 3,373,997 | 935,003 | 1,095,489 | 1,058,489 | 1,378,583 | 1,941,253 | 1,467,013 | 1,410,631 | 2,198,366 | 1,461,729 | 1,388,229 | 1,320,871 | 3,373,997 |
| Receipts | 1,095,436 | 1,058,489 | 1,722,680 | 1,597,358 | 1,519,735 | 1,624,701 | 2,002,123 | 1,653,201 | 1,420,932 | 1,497,471 | 1,306,697 | 1,695,002 | |
| Expenditures | (3,373,997) | (1,384,574) | (1,378,583) | (1,941,253) | (1,467,013) | (1,410,631) | (2,198,366) | (1,461,729) | (1,388,229) | (1,442,692) | (1,320,871) | (1,764,741) | |
| Ending Cash | 1,095,436 | 1,369,351 | 1,713,447 | 1,369,552 | 1,422,274 | 1,636,364 | 1,443,321 | 1,631,694 | 1,654,397 | 1,709,176 | 1,695,002 | 1,681,089 | |

* estimated at $3,250,000 @20% quarterly over 5 years beginning 4/15/2011

# Celebrity Resorts
## 2013 Cash Flow Budget

Budgets have not been reviewed by tax advisors

5/29/2010

| | January Budget | February Budget | March Budget | April Budget | May Budget | June Budget | July Budget | August Budget | September Budget | October Budget | November Budget | December Budget | Total 2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Front Line Net Sales (@$10,000 avg) | 250,000 | 360,000 | 370,000 | 370,000 | 340,000 | 340,000 | 450,000 | 450,000 | 340,000 | 400,000 | 390,000 | 450,000 | 4,510,000 |
| In House Net Sales (@$5,000 avg) | 120,000 | 120,000 | 130,000 | 140,000 | 150,000 | 160,000 | 200,000 | 200,000 | 150,000 | 175,000 | 200,000 | 250,000 | 1,995,000 |
| Total Net Sales | 370,000 | 480,000 | 500,000 | 510,000 | 490,000 | 500,000 | 650,000 | 650,000 | 490,000 | 575,000 | 590,000 | 700,000 | 6,505,000 |
| Net Weeks Developer | 28 | 36 | 37 | 37 | 34 | 34 | 45 | 45 | 34 | 40 | 39 | 53 | 488 |
| Net weeks HOA | 9 | 12 | 13 | 13 | 12 | 13 | 16 | 16 | 13 | 14 | 15 | 18 | 163 |
| Total Weeks sold | 37 | 48 | 51 | 51 | 50 | 50 | 65 | 65 | 49 | 58 | 59 | 70 | 651 |
| Down Payments @ 35% | 129,500 | 168,000 | 175,000 | 178,500 | 171,500 | 175,000 | 227,500 | 227,500 | 171,500 | 201,250 | 206,500 | 245,000 | 2,276,750 |
| 75% advance | 180,375 | 234,000 | 243,750 | 248,625 | 238,875 | 243,750 | 316,875 | 316,875 | 238,875 | 280,313 | 287,625 | 341,250 | 3,171,188 |
| NF collected - developer | 15,275 | 18,842 | 24,644 | 25,463 | 25,972 | 24,953 | 25,463 | 25,463 | 33,101 | 24,953 | 31,316 | 29,282 | 310,897 |
| NF collected HOA | 5,093 | 6,281 | 8,148 | 8,448 | 8,657 | 8,448 | 8,488 | 11,034 | 11,034 | 8,318 | 9,761 | 10,015 | 103,632 |
| Management Fees | 2,083,810 | | | | | | | | | | | | 2,083,810 |
| Shared Services Fees | | | | | | | | | | | | | |
| Reno | 5,725 | 5,725 | 5,725 | 5,725 | 5,725 | 5,725 | 5,725 | 5,725 | 5,725 | 5,725 | 5,725 | 5,725 | 68,701 |
| RW2 | 2,901 | 2,901 | 2,901 | 2,901 | 2,901 | 2,901 | 2,901 | 2,901 | 2,901 | 2,901 | 2,901 | 2,901 | 34,806 |
| Big Villas | 3,011 | 3,011 | 3,011 | 3,011 | 3,011 | 3,011 | 3,011 | 3,011 | 3,011 | 3,011 | 3,011 | 3,011 | 36,133 |
| Brig Inn | 15,206 | 15,206 | 15,206 | 15,206 | 15,206 | 15,206 | 15,206 | 15,206 | 15,206 | 15,206 | 15,206 | 15,206 | 182,468 |
| Oaks | 11,591 | 11,591 | 11,591 | 11,591 | 11,591 | 11,591 | 11,591 | 11,591 | 11,591 | 11,591 | 11,591 | 11,591 | 139,092 |
| Spas | 4,008 | 4,008 | 4,008 | 4,008 | 4,008 | 4,008 | 4,008 | 4,008 | 4,008 | 4,008 | 4,008 | 4,008 | 48,095 |
| Steamboat | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 14,058 | 168,693 |
| Hilltop | 1,939 | 1,939 | 1,939 | 1,939 | 1,939 | 1,939 | 1,939 | 1,939 | 1,939 | 1,939 | 1,939 | 1,939 | 23,262 |
| Total Shared Services Fees | 58,438 | 58,438 | 58,438 | 58,438 | 58,438 | 58,438 | 58,438 | 58,438 | 58,438 | 58,438 | 58,438 | 58,438 | 701,250 |
| Florida Club Revenue | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 648,000 |
| Association Payroll Reimb. | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 5,335,000 |
| Rental Revenue | 343,563 | 559,609 | 615,031 | 430,368 | 359,672 | 484,329 | 564,956 | 413,716 | 274,380 | 330,686 | 426,000 | 413,819 | 5,057,162 |
| S&M Program Receipts | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 1,800,000 |
| Concord Collections | 89,000 | 89,000 | 89,000 | 89,000 | 89,000 | 82,000 | 82,000 | 75,000 | 70,000 | 60,000 | 60,000 | 60,000 | 934,000 |
| Misc. Deposits | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 60,000 |
| **Total Cash Collections** | 3,555,055 | 1,784,170 | 1,863,810 | 1,688,880 | 1,602,114 | 1,726,788 | 2,145,719 | 1,785,563 | 1,567,327 | 1,613,957 | 1,568,639 | 2,070,567 | 22,862,608 |
| **Operating Expenses** | | | | | | | | | | | | | |
| Payroll | 333,423 | 333,423 | 333,423 | 333,423 | 333,423 | 333,423 | 333,423 | 333,423 | 333,423 | 333,423 | 333,423 | 333,423 | 4,324,659 |
| Association Payroll | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 426,000 | 5,335,000 |
| Strata Broker Commissions | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 91,250 | 1,095,000 |
| Owner Rental Costs Clear Water | 38,660 | 38,660 | 38,660 | 38,660 | 38,660 | 38,660 | 22,160 | 24,410 | 91,250 | 91,250 | 91,250 | 91,250 | 346,920 |
| Concord | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 257,500 |
| Warehouse rent | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 4,800 | 20,000 | 20,000 | 20,000 | 20,000 | 386,000 |
| Health Insurance | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 238,002 |
| W/C / Auto/ Liability/ E&O insurance | 15,449 | 15,449 | 2,100 | 2,100 | 94,761 | 15,449 | 15,449 | 15,449 | 15,449 | 15,449 | 15,449 | 15,449 | 238,000 |
| Credit Card Fees | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Breakout expense | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 60,000 |
| Phone systems maintenance | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 180,000 |
| Software expense | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 18,200 | 218,400 |
| Utilities | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| Telephone/Blackberry | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Copiers | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Consultants | | | | | | | | | | | | | |
| Sales/Marketing Expense @ 60% | 222,000 | 288,000 | 300,000 | 306,000 | 294,000 | 300,000 | 390,000 | 390,000 | 294,000 | 345,000 | 354,000 | 420,000 | 3,903,000 |
| Developer Obligation | 2,094,735 | | | | | | | | | | | | 2,094,735 |
| MF Payback to HOA | | | | | | | | | | | | | |
| Unsecured Creditor payback* | 8,148 | 6,281 | 8,148 | 8,448 | 8,657 | 8,448 | 8,488 | 11,034 | 11,034 | 8,318 | 9,761 | 10,015 | 103,632 |
| Rental Expense to associations | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 37,600 | 451,200 |
| Resort fees to associations | 7,563 | 7,563 | 7,563 | 7,563 | 7,563 | 7,563 | 7,563 | 7,563 | 7,563 | 7,563 | 7,563 | 7,563 | 90,750 |
| Rental Sales/Use taxes | 36,300 | 36,300 | 36,300 | 36,300 | 36,300 | 36,300 | 36,300 | 36,300 | 36,300 | 36,300 | 36,300 | 36,300 | 435,600 |
| Provision for Taxes | | | | | | | | | | | | | 60,000 |
| Other Expenses | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| **Total Operating Expenses** | 3,516,012 | 1,456,025 | 1,456,544 | 2,285,383 | 1,520,464 | 1,470,062 | 1,950,123 | 1,546,028 | 1,446,528 | 1,529,312 | 1,507,255 | 1,947,401 | 21,621,198 |
| Beginning Cash Balance | 1,881,089 | 1,720,072 | 2,048,216 | 2,455,643 | 1,858,981 | 1,940,631 | 2,197,356 | 2,392,952 | 2,632,597 | 2,691,386 | 2,776,030 | 2,837,414 | 1,881,089 |
| Receipts | 3,555,055 | 1,784,170 | 1,863,810 | 1,688,880 | 1,602,114 | 1,726,788 | 2,145,719 | 1,785,563 | 1,567,327 | 1,613,957 | 1,568,639 | 2,070,567 | 22,862,608 |
| Expenditures | (3,516,025) | (1,456,025) | (1,456,544) | (2,285,383) | (1,520,464) | (1,470,062) | (1,950,123) | (1,546,028) | (1,446,528) | (1,529,312) | (1,507,255) | (1,947,401) | (21,621,198) |
| Ending Cash | 2,048,216 | 2,048,216 | 2,455,643 | 1,858,981 | 1,940,631 | 2,197,356 | 2,392,952 | 2,632,597 | 2,691,386 | 2,776,030 | 2,837,414 | 2,910,580 | 2,910,580 |

* estimated at $3,250,000 @20% quarterly over 5 years beginning 4/15/2011

# Celebrity Resorts
## December 2010 - December 2011 Cash Flow Budget Assumptions

| | Total 2010-2011 | | Assumptions |
|---|---|---|---|
| Front Line Net Sales (@$10,000 avg) | $ | 2,077,500 | Based on projected arrivals for 2011 |
| In House Net Sales (@$5,000 avg) | $ | 970,000 | Based on projected arrivals for 2011 |
| Total Net Sales | $ | 3,047,500 | Based on projected arrivals for 2011 |
| Net Weeks Developer | | 229 | |
| Net weeks HOA | | 76 | |
| Total Weeks sold | | 305 | Based on projected closing % |
| Down Payments @ 35% | $ | 1,066,625 | Historical Down payments |
| 75% advance | $ | 1,485,656 | Agreed Textron terms |
| MF collected - developer | $ | 138,643 | Based on developer weeks sold |
| MF collected HOA | $ | 46,214 | Based on HOA weeks sold |
| Management Fees | $ | 2,227,223 | Contractual agreement |
| Shared Services Fees | | | |
| Reno | $ | 223,479 | |
| RW1 | $ | 10,600 | |
| RW2 | $ | 85,511 | |
| Brig Villas | $ | 47,160 | |
| Brig Inn | $ | 201,083 | |
| Oaks | $ | 185,502 | |
| Spas | $ | 142,435 | |
| Steamboat | $ | 203,489 | |
| Hilltop | $ | 155,415 | |
| Villas @ LBV | $ | 36,000 | |
| Total Shared Services Fees | $ | 1,290,674 | Agreement between Management Company and HOAs |
| Florida Club Revenue | $ | 702,000 | Equal to 2010 monthly spread over 13 months |
| Association Payroll Reimb. | $ | 6,174,000 | Actual payroll processed through ADP, offset in expense lin |
| Rental Revenue | $ | 4,545,843 | Increase over 2010 actuals |
| S&M Program Receipts | $ | 1,950,000 | 2010 running rate |
| Concord Collections | $ | 994,000 | 2010 running rate for HOA late fees and transfer fees |
| Hawley Proceeds | $ | 475,000 | Sale of property |
| Merchant Hold Release | $ | 300,000 | Agreed with B of A for release of hold due to BK |
| Misc. Deposits | $ | 260,000 | Marketing rent, etc.... |
| **Total Cash Collections** | **$** | **21,655,879** | |
| **Operating Expenses** | | | |
| Payroll | $ | 4,499,683 | Actuals plus 3.5% for 2011 |
| Association Payroll | $ | 6,174,000 | Offset to association payroll. |
| Administrative G&A | $ | 685,000 | Legal expense, bonuses, misc. BK wrap up costs |

| | | | |
|---|---|---:|---|
| Strata Broker Commissions | $ | 1,195,000 | Commissions relating to S&M receipts |
| Owner Rental Costs Clear Water | $ | 369,830 | Budgeted room rental commissions to owners plus clubhou |
| Concord | $ | 277,500 | Concord fees for collection of MFs and in house portfolio |
| Warehouse rent | $ | 62,400 | $4,800 per month based on lease for doc storage |
| Health Insurance @ 50% | $ | 364,000 | Blue Cross / Sun Life, etc. |
| W/C / Auto/ Liability/ D&O Insurance | $ | 253,451 | D&O insurance, van insurance, corporate business insuranc |
| Credit Card Fees | $ | 65,000 | Bank and credit card fees for conversions and rentals. |
| Broadband Expense | $ | 81,400 | Budget based on projections |
| Phone system maintenance | $ | 79,600 | Advanced communication Solution maintenance billing |
| Software expense | $ | 195,000 | Estimate of software upgrade expenses |
| Telephone/Blackberry | $ | 236,600 | 2010 actuals projected for 2011 |
| Utilities | $ | 130,000 | 2010 actuals projected for 2011 |
| Copiers | $ | 65,000 | 2010 actuals projected for 2011 |
| Consultants | $ | 160,000 | Continuation of consultant contract. |
| Sales/Marketing Expense @ 60% | $ | 1,828,500 | Projected expense based on club interval sales. |
| Developer Obiligation | $ | 2,480,874 | Based on 2011 billing |
| MF Payback to HOA | $ | 46,214 | Based on HOA weeks sold |
| Unsecured Creditor payback* | $ | 97,500 | Estimate based on confirmation |
| Rental Expense to associations | $ | 488,800 | Estimate based on 2010 |
| Resort fees to associations | $ | 102,965 | Reduced from 2010. No longer charged to owners. |
| Rental Sales/Use Tax | $ | 390,000 | Estimate based on 2010 |
| Provision for Taxes | $ | 500,000 | Estimate |
| Other Expenses | $ | 650,000 | Misc. |
| **Total Operating Expenses** | **$** | **21,528,317** | |

* estimated at $3,250,000 @20% quarterly over 5 years beginning 4/15/2011

**CELEBRITY RESORTS DEBTOR ENTITIES**
**Liquidation Analysis as of 10-1-2010 (unless noted otherwise)**

| ASSETS/PROCEEDS | | Estimated Liquidation Value |
|---|---|---|
| Cash | $ | 253,779.00 |
| Mortgages Receivable* | | |
|    Textron | $ | 1,521,380.55 |
|    5th 3rd | $ | - |
|    In-House* | $ | 240,410.10 |
| Inventory | | |
|    FSB | $ | 290,000.00 |
|    Inhouse | $ | 75,000.00 |
| Real Property | | |
|    RBC- Palm Coast Land | $ | 1,000,000.00 |
|    Spas Club Facilities | $ | 200,000.00 |
|    Oaks Club Facilities | $ | 75,000.00 |
|    Villas Club Facilities | $ | 100,000.00 |
|    Venezia Clubhouse | $ | 25,000.00 |
| Management Contracts & Other Rights | $ | - |
| | | |
| **Total Liquidation Value** | **$** | **3,780,569.65** |
| | | |
| Secured Claims | | |
|    Textron* | $ | 10,573,520.00 |
|    Farmington | $ | 4,942,241.51 |
|    RBC | $ | 1,483,081.27 |
|    5th 3rd Bank | $ | 3,030,354.01 |
| Administrative Claims: Chapter 7 | $ | 15,000.00 |
| Administrative Claims: Chapter 11 | $ | 500,000.00 |
| | | |
| **Total Amount Owed Creditors** | **$** | **20,544,196.79** |
| | | |
| **Available for Unsecured Creditors** | **$** | **-** |

*Estimate Balances are as of 7/31/10
**Assumes Chapter 7 trustee does not expend new funds to investigate & pursue causes of action
***Assumes Chapter 7 trustee does not have funds to dispute claims or adversarial proceedings
    so $85,552,548.95 of filed unsecured claims will apply
****Excludes Hawley & Venezia
*****Post bankruptcy payables of about $200,000 also owed from above entities

**Celebrity Resorts Management Services, LLC**
**Liquidation Analysis as of 10-1-2010 (unless noted otherwise)**

|  | | Estimated Liquidation Value |
|---|---|---|
| **ASSETS/PROCEEDS** | | |
| Cash | $ | - |
| AR | $ | - |
| Security Deposits | $ | 15,250.00 |
| | | |
| **Total Liquidation Value** | **$** | **15,250.00** |
| | | |
| Secured Claims | | |
| Other Non-Current Liabilities | $ | 12,995.00 |
| Administrative Claim Ch 7 | $ | 15,000.00 |
| Administrative Claim Ch 11 | $ | 500,000.00 |
| | | |
| **Total Amount Owed Creditors** | **$** | **527,995.00** |
| | | |
| **Available for Unsecured Creditors** | **$** | **-** |

*Assumes Chapter 7 trustee does not have funds to dispute claims or adversarial proceedings
**Unsecured Creditors pool is $3,305,577 larger than with substantive consolidation because intercompany payables are not eliminated
***Assumes Chapter 7 trustee does not expend new funds to investigate & pursue causes of action
****Assumes Chapter 7 trustee does not have funds to dispute claims or adversarial proceedings so $3,295,178.17 of filed unsecured claims will apply
*****Post bankruptcy payables also owed from above entities

<u>EXHIIBIT "F-1"</u>

**Celebrity Resorts Developers- Under Farmington Loan**
**Liquidation Analysis as of 10-1-2010 (unless noted otherwise)**

| ASSETS/PROCEEDS | | Estimated Liquidation Value |
|---|---|---|
| Cash | | |
| Mortgages Receivable** | | |
|   Textron | $ | 1,521,380.55 |
|   5th 3rd | $ | - |
|   In-House** | $ | 240,410.10 |
| Inventory | | |
|   FSB | $ | 290,000.00 |
|   In-House | $ | 75,000.00 |
| Real Property-RBC | | |
|   RBC-Palm Coast Land | $ | 1,000,000.00 |
| | | |
|   **Total Liquidation Value** | $ | **3,126,790.65** |
| | | |
| Secured Claims | | |
|   Textron** | $ | 10,573,520.00 |
|   Farmington | $ | 4,942,241.51 |
|   RBC | $ | 1,483,081.27 |
|   5th 3rd Bank | $ | 3,030,354.01 |
| Administrative Claims: Chapter 7 | $ | 15,000.00 |
| Administrative Claims: Chapter 11 | $ | 500,000.00 |
| | | |
|   **Total Amount Owed Creditors** | $ | **20,544,196.79** |
| | | |
| **Available for Unsecured Creditors** | $ | - |

*Developers include: CR, CRIS, CRSS, CRSSH, CRO, CRLB, CRPC, CRNJ, CRN, & CRH

**Estimate Balances are as of 7/31/10

***Unsecured Creditors pool is $2,365,142 larger than with substantive consolidation because
  intercompany payables are not eliminated

****Assumes Chapter 7 trustee does not expend new funds to investigate & pursue causes of action

*****Assumes Chapter 7 trustee does not have funds to dispute claims or adversarial proceedings
  so $31,911,153.34 of filed unsecured claims will apply

<u>EXHIIBIT "F-1"</u>

**Celebrity Resorts Managers & Developers- Under TFC Loan**
**Liquidation Analysis as of 10-1-2010 (unless noted otherwise)**

| ASSETS/PROCEEDS | Estimated Liquidation Value | |
|---|---|---|
| Cash | $ | - |
| Mortgages Receivable** | | |
|    Textron | $ | 1,521,380.55 |
|    5th 3rd | $ | - |
|    In-House** | $ | 240,410.10 |
| Inventory | | |
|    FSB | $ | 290,000.00 |
|    In-House | $ | 75,000.00 |
| Real Property-RBC | | |
|    RBC-Palm Coast Land | $ | 1,000,000.00 |
| Management Contracts & Other Rights | $ | - |
| | | |
|    **Total Liquidation Value** | $ | **3,126,790.65** |
| | | |
| Secured Claims | | |
|    Textron** | $ | 10,573,520.00 |
|    Farmington | $ | 4,942,241.51 |
|    RBC | $ | 1,483,081.27 |
|    5th 3rd Bank | $ | 3,030,354.01 |
| Administrative Claim Ch 7 | | $15,000.00 |
| Administrative Claim Ch 11 | | $500,000.00 |
| | | |
|    **Total Amount Owed Creditors** | $ | **20,544,196.79** |
| | | |
| **Available for Unsecured Creditors** | $ | - |

*Developers include: CR, CRIS, CRSS, CRSSH, CRO, CRLB, CRPC, CRNJ, CRN, & CRH
 Managers include:CRM, CRFM, CRCM, CRNJM, CRNM
**Estimate Balances are as of 7/31/10
***Assumes Chapter 7 trustee does not expend new funds to investigate & pursue causes of action
****Assumes Chapter 7 trustee does not have funds to dispute claims or adversarial proceedings
    so $45,041,807 of filed unsecured claims will apply
*****Post bankruptcy payables also owed from above entities

**CRO, CRLBV, CRM, CRMS- Under 5th 3rd Loan**
**Liquidation Analysis as of 10-1-2010 (unless noted otherwise)**

| ASSETS/PROCEEDS | | Estimated Liquidation Value |
|---|---|---:|
| Cash | $ | - |
| Mortgages Receivable* | | |
| Textron | $ | 1,151,703.48 |
| 5th 3rd | $ | - |
| In-House* | $ | 112,169.67 |
| Inventory | | |
| FSB | $ | 54,023.17 |
| Inhouse | $ | 44,012.94 |
| Deferred Assets | $ | 15,250.00 |
| Management & Other Rights | | |
| | | |
| **Total Liquidation Value** | **$** | **1,377,159.26** |
| | | |
| Secured Claims | | |
| Textron* | $ | 10,573,520.00 |
| Farmington | $ | 4,942,241.51 |
| 5th 3rd Bank | $ | 3,030,354.01 |
| Deposits | $ | 137,885.00 |
| Other Non-Current Liabilities | $ | 12,995.00 |
| Administrative Claim Ch 7 | $ | 15,000.00 |
| Administrative Claim Ch 11 | $ | 500,000.00 |
| | | |
| **Total Amount Owed Creditors** | **$** | **19,211,995.52** |
| | | |
| **Available for Unsecured Creditors** | **$** | **-** |

*Estimate Balances are as of 7/31/10
**Assumes Chapter 7 trustee does not expend new funds to investigate & pursue causes of action
***Assumes Chapter 7 trustee does not have funds to dispute claims or adversarial proceedings
    so $23,303,029.24 of filed unsecured claims will apply
****Post bankruptcy payables also owed from above entities

**Venezia CE, LLC**
**Liquidation Analysis as of 10-1-2010 (unless noted otherwise)**

| ASSETS/PROCEEDS | Estimated Liquidation Value | |
|---|---|---|
| Cash | $ | - |
| AR | $ | 175,000.00 |
| Security Deposits | $ | - |
| | | |
| **Total Liquidation Value** | **$** | **175,000.00** |
| | | |
| Secured Claims | | |
| Other Non-Current Liabilities | | |
| Administrative Claim Ch 7 | $ | 15,000.00 |
| Administrative Claim Ch 11 | $ | 500,000.00 |
| | | |
| **Total Amount Owed Creditors** | **$** | **515,000.00** |
| | | |
| **Available for Unsecured Creditors** | **$** | **-** |

*However, Debtors do not believe there are
any Allowed Claims of Venezia CE, LLC

**Celebrity Resorts of Hawley, LLC**
**Liquidation Analysis as of 10-1-2010 (unless noted otherwise)**

| ASSETS/PROCEEDS | | Estimated Liquidation Value |
|---|---|---|
| Cash | $ | 501,000.00 |
| AR | $ | - |
| Security Deposits | $ | - |
| | | |
| **Total Liquidation Value** | **$** | **501,000.00** |
| | | |
| Secured Claims | | |
| Other Non-Current Liabilities | | |
| Administrative Claim Ch 7 | $ | 15,000.00 |
| Administrative Claim Ch 11 | $ | 500,000.00 |
| | | |
| **Total Amount Owed Creditors** | **$** | **515,000.00** |
| | | |
| **Available for Unsecured Creditors** | **$** | **-** |

*However, Debtors do not believe there are
any Allowed Claims of Celebrity Resorts of
Hawley, LLC

EXHIBIT "F-1"

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                              CHAPTER 11

CELEBRITY RESORTS, LLC, *et al.,*                   CASE NO.: 6:10-bk-03550-ABB

Debtor.                                             Jointly Administered with Cases
                                                    6:10-bk-03551-ABB to 6:10-bk-03585-ABB

_____/

## MEDIATION REPORT

Elizabeth A. Green, in her capacity as Mediator in this case, hereby files this report

regarding the results of the mediation conducted on October 29, 2010.

## BACKGROUND

1.    The Mediator was engaged to mediate various disputes involving Celebrity

Resorts of Clearwater Management Company, LLC ("Celebrity"), Grand Venezia COA, Inc.

("The Association") and Venezia CE, LLC ("Venezia") and their affiliates (collectively, "The

Debtors") relative to Case No. 3:08-bk-03550-ABB and Jointly Administered with 6:10-bk-

03551-ABB to 6:10-bk-03585-ABB filed in the United States Bankruptcy Court for the Middle

District of Florida, Orlando Division.

2.    A mediation session was scheduled for October 29, 2010. Prior to the mediation

session, the parties provided the mediator with reports regarding their respective positions, as

well as copies of pleadings they deemed relevant.

3.    All parties attended the mediation session through counsel and with client

representatives.

## EXHIBIT "G"

4.    A final agreement was reached by the end of the October 29, 2010 mediation session resulting in a signed Mediation Settlement Agreement which is attached hereto as **Exhibit "A"**. Terms of the Mediation Settlement Agreement will be included in the Debtors' Plan of Reorganization.

Respectfully submitted this 11th day of November, 2010,

/s/Elizabeth A. Green
Elizabeth A. Green, Esquire
Florida Bar No.: 0600547
**BAKER & HOSTETLER LLP**
200 S. Orange Ave.
SunTrust Center, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
Email: egreen@bakerlaw.com
Mediator

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a true and correct copy of the foregoing MEDIATION REPORT has been furnished via electronic transmission using via the Court's CM/ECF System to all parties requesting such notice, and/or via U.S. First Class Postage Prepaid Mail on this 11th day of November, 2010 to:  Grand Venezia COA, Inc., c/o Andrew Brumby, Esq., Shutts & Bowen, 300 S. Orange Ave., Suite 1000, Orlando, FL 32801; Venezia CD, LLC and Celebrity Resorts of Clearwater Management Company, LLC c/o R. Scott Shuker, Esq., Latham, Shuker, Eden & Beaudine, LLP, 390 N. Orange Ave., Suite 600, Orlando, Florida 32801.

/s/Elizabeth A. Green
Elizabeth A. Green, Esquire

**EXHIBIT "G"**

## MEDIATION SETTLEMENT AGREEMENT

Grand Venezia COA, Inc. ("The Association"), Celebrity Resorts of Clearwater Management Company, LLC ("Celebrity"), and Venezia CE, LLC ("Venezia") and their affiliates (collectively "Debtors") agree to resolve all claims which have been raised, or could have been raised between The Association and Debtors and other issues related to the confirmation of the Debtors Plan of Reorganization, as follows:

1.  The Association shall pay Venezia the sum of one hundred and seventy five thousand dollars ($175,000.00) on the first business day after the confirmation order becoming final and non appealable simultaneous with the conveyance set forth in paragraph two below. In the event that the conveyance contemplated in paragraph two below does not close on the first business day after the confirmation order becomes final and non appealable, because the $175,000.00 is not paid, The Association shall pay an additional fifty thousand dollars ($50,000.00) per month, up to five hundred thousand dollars ($500,000.00) to Venezia in order to consummate the transaction. The Association and the Debtors may jointly waive the requirement that the confirmation order be final and non appealable.

2.  Upon receipt of the payment referred to in paragraph one above, the Debtors shall convey to The Association, or its designee, pursuant to the confirmed plan of reorganization, all personal property located on or incident to operation of the amenities together with all real property owned by the Debtors at or in connection with the development known as Grand Venezia at Baywatch ("Property") as of October 29, 2010. By way of illustration, property incident to the operation of the amenities includes but is not limited to furniture, equipment, and fixtures related to the clubhouse and / or recreational amenities. Personal Property not incident to the operation of the amenities shall be retained by the Debtors. The Property shall be

conveyed free and clear of all liens, claims and encumbrances except the 2010 real property taxes in the approximate amount of $21,000.00. The Debtors shall convey the real property via Special Warranty Deed, and the Personal Property via a Bill of Sale. The Plan of Reorganization shall provide the protections and benefits set forth in 11 U.S.C.1146(a).

3.      The Debtors shall provide access to the Property to the Association, within three business days of the date of this agreement, or at another mutually agreeable date, for the purposes of inspecting and inventorying the Property. Further, the Debtors shall respond with reasonable promptness to requests to enter the Property for emergency purposes.

4.      The Association shall have an Allowed Unsecured Claim in the Debtors case in the amount of  Fifty Thousand dollars ($50,000.00)  and shall vote in favor of a plan of reorganization which contains the provisions set forth in this agreement.

5.      The Association and The Debtors shall execute a non disparagement agreement, in a form and substance reasonably acceptable to the parties,  related to the Debtors and their officers and members , which shall be binding upon the members of the board of directors of the Association. The Association shall withdraw any complaint which can reasonably be withdrawn, that The Association has made to any regulatory or other agency, if any.

6.      The Association and its board members  and the Debtors , and their officers , and members  shall execute mutual releases of each other and their officers, directors, members, employee, agents, and attorneys.  All pending litigation shall be dismissed with prejudice.

[INTENTIONALLY LEFT BLANK]

**EXHIBIT "G"**

Each party shall bear their own costs and attorneys fees.  The Debtors and the Association shall each pay fifty percent (50%) of the mediation fee.

     DATED:  October 29, 2010

_____
Elizabeth A. Green, Esq., Mediator

_____
Grand Venezia COA, Inc.

By its _PRESIDENT_____

_____
Venezia CE, LLC

By its _SVP & General Counsel_____

_____
Celebrity Resorts of Clearwater Management Company, LLC

By its _SVP & General Counsel_____

**EXHIBIT "G"**