UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| CELEBRITY RESORTS, LLC., et al., | CASE NO.S 6:10-BK-3550-ABB |
| Debtors. _____/ | Jointly Administered with Cases 6:10-bk-3551-ABB through 6:10-3585-ABB |

DR. NEIL S. MEYERS' (I) OBJECTION TO CONFIRMATION
OF THE DEBTORS' AMENDED PLAN OF REORGANIZATION;
(II) OBJECTION TO THE DEBTORS' AMENDED DISCLOSURE STATEMENT
AND (III) MOTION TO TERMINATE THE DEBTORS' EXCLUSIVE RIGHT TO
PROPOSE A PLAN AND TO SOLICIT ACCEPTANCES

Dr. Neil S. Meyers ("Neil"), individually and as assignee of Farmington Bank, by and through his undersigned counsel, files this Objection to Confirmation of the Debtors' Amended Plan of Reorganization, Objection to the Debtors' Amended Disclosure Statement and Motion to Terminate the Debtors' Exclusive Right to Propose a Plan and to Solicit Acceptances pursuant to 11 U.S.C. § 1121 (the "Objection") and says:

The Debtors commenced these cases by filing voluntary chapter 11 bankruptcy petitions on March 5, 2010 (the "Petition Date"). The Debtors are acting as Debtors in possession, no trustee having been appointed.

On September 30, 2010, the Debtors filed their Disclosure Statement (the "Disclosure Statement") (Docket Entry 345) and their Joint Plan of Reorganization Submitted by Celebrity Resorts, LLC., et al. (the "Plan") (Docket Entry 346).

On November 24, 2010 the Debtors filed their Amended Joint Disclosure Statement Pursuant to 11 U.S.C. § 1125 for Celebrity Resorts, LLC., et al., (the "Amended Disclosure Statement") (Docket Entry 422) and the Amended Joint Plan of

1

Reorganization Submitted by Celebrity Resorts, LLC. (the "Amended Plan")(Docket Entry 423).

On November 1, 2010, Dr. Neil S. Meyers filed the Motion to Terminate the Debtors' Exclusive Right to Propose a Plan and to Solicit Acceptances pursuant to 11 U.S.C. § 1121. (Docket Entry 399). In the interest of judicial economy, the premises, bases and arguments set forth in Docket Entry 399 are incorporated herein by reference.

I.

The Debtors' Amended Plan can be easily summarized as an attempt by the Debtor to judicially bless a fraudulent asset conversion by Jared Meyers on a grand scale. The Debtors made a deal with Textron Financial Corporation, who has begun the process of winding down and liquidating its leisure resort financing arm to the timeshare industry, so as to obtain the favor of at least one impaired class. The Amended Plan then purports to effectuate a "cramdown" of the plan on all other classes of creditors. The remaining secured creditors will have their collateral returned to them in full satisfaction of their respective claims. In regards to the secured claims of Farmington Bank and Fifth Third Bank, there will be no practicable ability to effectively sell or market their collateral. Therefore, their respective collateral will either become worthless or substantially less than the value assigned by the Debtors.

The Debtor proposes to pay non-priority unsecured creditors a $650,000 promissory note in quarterly installments from future revenues. All interests in the various entities will be canceled. In turn, Jared Meyers ("Jared") will obtain the exclusive right to own the stock in the reorganized debtors with his wife as tenants by the entireties even though neither he nor his wife are contributing any value. To the contrary,

Jared Meyers' supposed contribution of non-existent new value consists of, among other things, the waiver of dubiously filed proofs of claim and supposed indemnification rights that are due to be disallowed, if they exist at all, and the contribution of entities that are Debtors in these proceedings.

II

Section 1121(c) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, provides in pertinent part:

> Any party interest , including the debtor, the trustee, a creditors committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if-
>
> (3) *the debtor has not filed plan that has been accepted*, before 180 days after the date of the order for relief under this chapter, *by each class of claims that is impaired under this plan.*

11 U.S.C. § 1121(c). (Emphasis added).

Classes ten (10) through forty-seven (47) of the Amended Plan consist of equity interests that are being canceled. Consequently, each of these claims are impaired and deemed to have rejected the Amended Plan. In addition, Dr. Neil S. Meyers, as the assignee of the Farmington Bank Class 4 claim, has rejected the Amended Plan. Therefore, pursuant to 11 U.S.C. § 1121( c) the Court should either continue the hearing on the confirmation of the Debtors' Amended plan or deny confirmation thereof outright to permit creditors to consider alternatives that not only provide greater returns to creditors but, more importantly, are not as deceptive and illusory as the Amended Plan whose principal aim seems to be to benefit the same insider whose mismanagement resulted in the filing of this case.

## III

## Artificial Impairment, and Separate Classification and Unfair Discrimination,

Under the Amended Plan, Class 9 General Unsecured creditors are to receive a promissory note for $650,000 payable in quarterly installments. However, whereas the Debtors' original plan consisted of forty-four (44) classes, the Amended Plan consists of forty-five (45) classes. It appears that in order to hedge their bet the Debtors used sleight of hand to artificially manufacture a class for the unsecured claim of Grand Venezia COA, Inc. and attempted to classify it as a "potential secured claim." Under the Amended Plan, Class 8 is now set forth as follows:

Class 8-Grand Venezia COA, Inc.

Class 8 consists of the Allowed Claim of Grand Venezia COA, Inc. ("GVI"). GVI is the ***holder of a potential secured claim*** in respect of management services provided by Debtor Celebrity Resorts of Clearwater Management Company, LLC ("CMC") and Venezia CE LLC ("VE LLC"). In full satisfaction of the Allowed Class 8 Claims, GVI, CMC and VE, LLC. will comply with the terms of the Mediators Report.

See the Amended Plan at page 34. (Emphasis added)

A copy of the Mediators Report is attached to the Amended Disclosure Statement. Among other things, under the Mediators Report, Grand Venezia COA, LLC., will pay the Debtor a sum of money, refrain from disparaging Jared Meyers, against whom claims for mismanagement have been made, and withdraw its complaints with the applicable regulatory agencies, none of which are disclosed, and receive a *general unsecured claim* for $50,000.00. There is no mention of a purported secured claim and there has been no motion seeking court approval of the controversy purportedly resolved by the mediator as required by FRBP 9019.

Among other things, the Complaint attached as an exhibit to the unsecured proof of claim filed by Grand Venezia LLC., alleges that neither Jared nor Debtor Celebrity Resorts of Clearwater Management Company LLC., were licensed community association managers at the relevant times, failed to remit fees due to the association, failed to provide accounting, illegally commingled association funds with the Debtors' funds and breached his fiduciary duty failing to (a) prepare or provide the required financial reports, (b) failed to prepare and adopt a budget in the manner required by Florida law, ( c) entered into management contracts with affiliated entities without disclosing the conflicts of interest, (d) entered into management contracts with entities that were not licensed to do so, (e) entered into management contracts with these same undisclosed affiliated entities in amounts approximately three (3) times the reasonable management fee, (f) allowed individuals who were not licensed to perform such services to conduct board of directors meetings, (g) failed to attempt to collect or cause to be collected over $1,924,800 in past due assessments from delinquent unit owners[1] and (h) failed to make the association's records available within forty-five (45) miles of the condominium within five (5) working days of the request.

The schedules filed in the *In re Celebrity Resorts of Clearwater Management Company, LLC.,* Case No. 10-3562 and *In re Venezia CE, LLC.,* 10-3581, list the claim of Grand Venezia LLC., as a disputed, contingent non-priority unsecured claim. Indeed, Grand Venezia LLC., filed a non-priority unsecured claim in the amount of $394,126.00

---

[1] Upon information and belief as late as July 2010 there were approximately 10,000 unit owners of the approximately 40,000, or roughly twenty-five percent (25%) who were delinquent on their association dues and some of the Debtor entities who possessed the responsibility for pursuing these fees breached, and continue to be in breach of, their respective duties to pursue these monies.

5

in the *In re Celebrity Resorts of Clearwater Management Company, LLC.,* case. A copy of the Grand Venezia COA, LLC., claim is attached as Exhibit 1.

It is clear that this new and separate Class 8 Claim was artificially manufactured for the purpose of gerrymandering an impaired accepting class and improperly discriminating amongst similarly situated creditors. If the general unsecured claim accorded to Grand Venezia COA, LLC is to be paid in full, it is clear that the Debtors are unfairly discriminating. On the other hand, if it is to be paid in the same manner as other non-priority unsecured claims the only purpose for separately classifying this claim is to manufacture a potential accepting impaired class.

The absence of disclosures concerning the "potential secured claim" that neither party claimed existed until the Amended Plan was filed on November 24, 2010, coupled with the schedules, the mediators report and, more importantly, the proof of claim filed by the supposed "potential secured creditor" demonstrate the ends justify the means strategy the Debtors in this proceeding and in the Amended Plan. Furthermore, the omissions concerning the extent to which Jared Meyers mismanaged this and other homeowners associations demonstrate that the continuance of Jared Meyers' control of the Debtors is not consistent with the interests of creditors and public policy under 11 U.S.C. § 1129(5)(A)(ii). Moreover, given the Debtors' failure to properly notice the controversy between the Debtors and Grand Venezia COA, LLC., under FRBP 9019, it is clear that the Amended Plan fails to comply with § 1129(a)(2).

### Non-Disclosure and Bad Faith.

As set forth in the Motion to Terminate Exclusivity (Docket Entry 399), the Debtors are purporting to give Jared Meyers' broad releases for no consideration and

without disclosing the extent of the claims against Jared Meyers. The numerous instances of and systematic self-dealing by Jared Meyers and his uncle, Mr. Craig Lewis contributed to the deepening insolvency of the Debtors and the associations that Jared and Mr. Lewis controlled and to whom they owed higher duties of fidelity and honesty. There is no disclosure of these claims in the Amended Disclosure Statement and under the Amended Plan, there is no provision for the pursuit and recovery of these claims in the Plan. Given the existence of a D&O insurance policy there ought to be.

In ***In re Transit Group, Inc.,*** 286 B.R. 811 (Bankr.M.D.Fla. 2002) Judge Jennemann held that:

> . . .[I]n order for a debtor to confirm a plan of reorganization containing a non-debtor release, the debtor must demonstrate that unusual circumstances exist, and that the non-debtor release is fair and necessary, utilizing those factors listed above that are applicable. A case by case analysis is required. Moreover, allowing non-debtor releases is the exception, not the norm. Debtors should not automatically expect to release officers, directors, insurers, or creditors from future liability, unless some extraordinary reason is proven.

***In re Transit Group, Inc.,*** 286 B.R. at 817-18. The omission of the concealed transfers and the absence of sufficient disclosures concerning the pending claims against Jared prevent the Court from making this analysis. In addition, the potential claims against Jared and the surrounding circumstances dictate that the proposed releases should not be granted since they fail to demonstrate the existence of unusual circumstances or why this case is the exception.

Boiled to its essence, the Debtors' Amended plan is a disguised but calculated "fraudulent asset conversion" under Florida Statutes, § 222.29, of the reorganized debtors' stock. Jared Meyers has been sued and threatened with suit and is in default of numerous guaranty obligations. Given the broad release provisions, Jared Meyers is

7

seeking to utilize the Debtors' insolvency, to which he substantially contributed, as means of obtaining a free discharge without having to make the required disclosures that 99.9999% of the debtor universe seeking such relief must make. Given the fact that the Court has previously found Jared Meyers lacking in credibility, the surrounding circumstances dictate that the Debtors Amended Plan was not proposed in good faith as required by 11 U.S.C. § 1129(a)(3). Moreover, the Debtors have failed to demonstrate the existence of the unusual circumstances, the necessity of the proposed release or the extent to which the proposed release in favor of Jared Meyers does not violate public policy.

### The Absolute Priority Rule-11 U.S.C. § 1129(a)(9)(B)(ii)

The Amended Plan also violates the "absolute priority rule" by permitting Jared to enjoy the exclusive right to maintain and obtain the ownership and control of the reorganized debtors without providing any new value. In this case, the Debtor has proposed to surrender the collateral to Farmington Bank in full satisfaction of its secured claim even though Jared Meyers' mismanagement of the respective homeowners associations, the current state of affairs of the time share industry and the inability of Farmington to attempt to market its inventory on site denudes any potential value of the collateral. As the assignee of the Farmington Bank claim, Dr. Neil S. Meyers has rejected the Plan. In addition, all equity interests are being canceled and are presumed to reject the plan. Consequently, the absolute priority rule is invoked and prevents confirmation of the Plan based upon Jared Meyers' exclusive right to obtain the ownership and control of the Debtors for no new value at all.

Notwithstanding the fact that Jared Meyers is contributing no new value at all, his attempts to obtain the exclusive opportunity to provide "new value" violates the United States Supreme Court's decision in *Bank of America v. 203 North LaSalle Street Partnership*, 119 S.Ct. 1411 (1999). In *203 North Lasalle Street Partnership*, although the Supreme Court refused to confirm the existence of a new value corollary to the absolute priority rule, it concluded that "plans providing junior interest holders with exclusive opportunities free from competition and without benefit of market valuation fall within the prohibition of 1129(b)(2)(B)(ii)." *Id.* at 1424. Furthermore, the supposed new value Jared proposes to contribute is not new value at all. See *203 North LaSalle and Norwest Bank v. Ahlers,* 108 S.Ct. 963 (1988).[2] The Debtors' failure to make any, much less, adequate, disclosures concerning the manner in which the Debtors arrived at the conclusion that Jared's supposed new value approximates $18,500,000 only buttresses the degree and extent to which the Debtors' Amended Plan was proposed in bad faith as proscribed by 11 U.S.C. § 1129(a)(3).

---

[2] Several courts have concluded that the waiver of claims, especially those by insiders, do not constitute money or money's worth. *See e.g. In re Beaver Products, Inc.,* 185 B.R. 537, 542-43 (Bankr.N.D. Ohio 1995) and cases cited therein. Numerous courts have also concluded that the "new value must be a present contribution rather than a promise to pay in the future, it must be freely tradeable in the market by the debtor and it must be an asset in the accounting sense." *In re SunCruz Casinos, LLC.,* 298 B.R. 833, 841 (Bankr.S.D.Fla. 2003). In *In re Rocha,* 179 B.R. 305, 308 (Bankr.M.D.Fla. 1995) Judge Funk concluded that:
> ... future earnings are not considered a new value contribution, but instead are a natural and necessary source of plan funding. New value arises in business cases only if contributions are offered over and above future earnings. (Citations omitted). The Supreme Court held in *Ahlers,* supra that the new value must be something of value that can be exchanged by the creditors in the market today, not merely a promise of future services... The contribution cannot be a future contribution, it must be present taking place at or before the effective date of the plan. (Citations omitted).

*In re Rocha,* 179 B.R. at 308. (Citations omitted).

## Feasibility

The Debtors' Amended Plan is premised upon the Debtors' being able to operate and provide access to the interval owners to amenities the Debtors do not own. The liquidation analysis attached to the Amended Disclosure Statement identifies land, clubhouses and amenities that are not owned by any of the Debtors. Instead, the amenities are owned by First Continental Corporation.

As the Court may recall from testimony that was given in Adversary Proceeding 10-178, in the Summer of 2008, the Debtors backdated several transactions to January 1, 2007. One of those transactions involved the supposed conversion of First Continental Corporation. A copy of the asset purchase agreement is attached as Exhibit 2. As set forth on the Asset Purchase Agreement, the Debtors were purchasing only those assets specifically identified. However, the land, club houses and amenities were not among the assets purchased and the purchase price does not reflect the value of the land, clubhouses and amenities. A copy of the deed for the land and amenities known as the Club of the Spas, Oaks and Villas is attached as Exhibit 3. However, in contradistinction to the Debtors' claims, the amenities the Debtors call the Club of the Spas, the Club of the Oaks are owned by First Continental Corporation which is solely owned by Dr. Neil S. Meyers. According to the Quitclaim Deed, which was duly recorded on March 4, 2003, First Continental Corporation is the owner of the Club of the Spas, Oaks and Villas properties.

Consequently, it appears that the Debtors and the interval owners are nothing more than trespassers who have no rights to the amenities. Consequently, to the extent the Debtors financial projections include the fees charged for the amenities owned by First Continental Corporation, the Amended Plan is not feasible. Moreover, when the

interval owners realize the extent to which they are not permitted to use the amenities owned by First Continental Corporation, it is likely that the Debtors will experience defaults and other litigation that will adversely impact its future revenue stream. Accordingly, to the extent the Debtors' Amended Plan is premised upon the ability to charge for fees for benefits the Debtors are providing illegally, the Debtors' Amended Plan is not feasible. Consequently, the Debtors' Amended Plan fails to comply with 11 U.S.C. § 1129(a)(11). Furthermore, it is respectfully submitted that as expansive as this Court's jurisdiction is, it lacks the jurisdiction to enter a final order giving the Debtors and the interval owners the carte blanche to perpetually trespass. Accordingly, the Debtors' Amended Plan has been proposed in a means forbidden by law and is therefore not confirmable under 11 U.S.C. § 1129(a)(3).

Finally, the Debtors purported to execute an Operating Agreement of Celebrity Resorts International Management Services, LLC. (the "Operating Agreement") and the Celebrity Resorts International, LP Agreement of Limited Partnership in July 2008. A copy of the Operating Agreement is attached as Exhibit 4. Dr. Neil S. Meyers disputes the validity of these documents. However, among other things, the Operating Agreement names Dr. Neil S. Meyers as a "Special Manager" whose term is for life or until he resigns. These agreements were drafted at the behest and for the benefit of Jared Meyers. The Operating Agreement also defines a category of "Major Actions." Major Actions require the consent of Dr. Neil S. Meyers and include the commencement of a bankruptcy case (see Operating Agreement §1.15(i) at page 4) and the sale or exchange of all or any material portion of the Company's property (see Operating Agreement at §1.15(i) at page 4) in the manner provided for by the Debtors' Amended Plan.

In this case, Dr. Neil S. Meyers neither consented to the commencement of these cases nor to the transfer of the assets and other transactions contemplated by the Amended Plan. Inasmuch as Jared Meyers purported to terminate Dr. Neil S. Meyers as Special Manager, the respective agreements and applicable non-bankruptcy law do not permit his termination since his tenure as Special Manager is for life or until his resignation: Dr. Meyers is still among the living and has not resigned. Accordingly, the Debtors' Amended Plan has not been proposed in accordance with applicable nonbankruptcy law.

## Relief Requested

For the reasons set forth above, Dr. Neil S. Meyers Neil Meyers respectfully requests the entry of an order denying confirmation of the Debtors' Amended Plan, sustaining his objection to the adequacy of the information of the Debtors' Amended Disclosure Statement and terminating the Debtors exclusive right to file a plan of reorganization and to solicit acceptances thereof and such other relief as may be just and appropriate.

Dated this 15th day of December, 2010.

/s/ Nicholas B. Bangos
Nicholas B. Bangos
Florida Bar No. 0834238
Nicholas B. Bangos, P.A.
100 S.E. 2nd Street, Suite 2600
Miami, Fl 33131
Tel: 305-375-9220
Facsimile: 305-375-8050
nbangos@diazreus.com
*Attorneys for Dr. Neil Meyers*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished either electronically via the Court's CM/ECF system or by U.S. Mail, First Class, to all parties on the attached matrix this to all others on the 15th day of December, 2010 and to R. Scott Shuker, 390 N. Orange Avenue, Suite 600, Orlando, Fl 32801Celebrity Resorts, LLC, Attn: Jared M. Meyers, CEO, 8451 Palm Parkway, Orlando, FL 32836 United States Trustee, 135 West Central Blvd., Suite 620, Orlando, FL 32801 and to Roy S. Kobert, Attorney for the Official Committee of Unsecured Creditors, 390 North Orange Avenue, Suite 1400, Miami, Fl 32801-4961.

                                              /s/ Nicholas B. Bangos
                                              Nicholas B. Bangos