UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

CELEBRITY RESORTS, LLC, *et al.*,

Debtors.

_____/

Case No.: 6:10-bk-03550-ABB
Chapter 11
(Jointly Administered with Cases
6:10-bk-3551-ABB to 6:10-bk-3585-ABB)

## ORDER CONFIRMING AMENDED JOINT PLAN OF REORGANIZATION, AS MODIFIED, SUBMITTED BY CELEBRITY RESORTS, LLC, *ET AL.*

**THIS CASE** came on for hearing on December 22, 2010 (the "Hearing") to consider: (a) approval of the Amended Joint Disclosure Statement dated November 19, 2010 (Doc No. 422) ("Disclosure Statement") submitted by Celebrity Resorts, LLC ("Celebrity") and the thirty-two affiliated debtors and debtors-in-possession, who are being jointly administered as shown on Exhibit A attached hereto (collectively, the "Debtors"); (b) confirmation of the Debtors' Amended Joint Plan of Reorganization dated November 19, 2010 (Doc No. 423) (the "Plan") and the Debtors' Modifications to Amended Joint Plan of Reorganization ("Modifications") filed December 21, 2010 (Doc. No. 529); (c) Debtors' Motion for Cramdown of Class 4 (Doc. No. 525) ("Cramdown Motion"); (d) Debtors' Motion to Allow Late-Filed Ballots ("Late Ballot Motion") (Doc. No. 513); (f) Objection to the Plan filed by The Club at Star Island ("CSI") (Doc No. 487); (g) Objection to confirmation and request to end exclusivity filed by Dr. Neil S. Meyers ("Dr. Meyers") (Doc No. 495); (h) Osceola and Orange County Tax Collectors' Objection to the Plan (Doc No. 491); and (i) Debtors' motion to designate the vote of Dr. Meyers

pursuant to 11 U.S.C. Section 1126(e) as (i) not in good faith, and (ii) not procured in good faith (Doc No. 493) ("Bad Faith Vote Motion").[1]

The Court also considered: (a) the Amended Ballot Tabulation (Doc. No. 521); (b) the Supplemental Objection to Confirmation of the Debtors Joint Amend[ed] Plan of Reorganization filed by Dr. Meyers (Doc. No. 537); (c) CSI's Post Trial Memorandum Opposing Confirmation of the Plan and Substantive Consolidation and Opposing the Calculation of Late Filed Ballots (Doc. No. 538); (d) Debtors' Response to the Supplemental Objections and Post-Trial Memorandum (Doc No. 542); (e) Derek C. Meyers' Objection to Confirmation, Objection to Disclosure Statement, and Objection to Ballot Tabulation (Doc. No. 539); and (f) Dylan B. Meyers' Objection to Confirmation, Objection to Disclosure Statement, and Objection to Ballot Tabulation filed by Monica Meyers as the Natural Guardian and Parent of Dylan B. Meyers (Doc. No. 540).

Counsel for the Debtors announced at the Hearing *ore tenus* modifications to the Plan (the "*Ore Tenus* Modifications") as follows:

1. Debtors will escrow the amount of $21,000.00 with respect to the pending administrative claim filed by Walley's Home Owners Association on December 8, 2010 (Doc No. 461) ("Walley's HOA Administrative Claim");

2. Debtors will pay the 2010 ad valorem real estate taxes no later than March 31, 2011. If the Reorganized Debtors fail to pay by the deadline, the respective Tax Collectors are free to pursue all *in rem* remedies. Based upon this agreement, the Tax Objections were withdrawn; and

3. In the event the Reorganized Debtors fail to pursue any claim objection as to which the Creditors Trust thereafter prosecutes and prevails, the Unsecured Note will increase, dollar-for-dollar, by the amount of claim reduction.

---

[1] Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed to them in the Plan and Disclosure Statement.

The Disclosure Statement is due to be approved and the Plan is due to be confirmed for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Case Background*

The bankruptcy cases filed by the Debtors stem from a ferocious family dispute regarding the ownership and control of the Debtors' timeshare enterprise. Dr. Meyers has challenged the Debtors' actions at every step of this proceeding. Dr. Meyers contested the bankruptcy filings asserting he, and not his eldest son Jared M. Meyers ("Jared"), owns and controls the Debtors. Dr. Meyers acquired the secured claim of the Debtors' primary secured creditor, Farmington Bank, which has generated significant litigation involving the claim's valuation and confirmation. The younger sons Derek Meyers and Dylan Meyers have been involved in the disputes. It has been difficult to reach the absolute truth of the parties' allegations due to the intense emotions fueling the litigation.

The Court, after a two-day evidentiary hearing, held Jared had ownership and control of the Debtors on the petition date and was authorized to file the bankruptcy petitions. The Court conducted a full day valuation hearing on the Farmington Bank claim and determined the claim's value to be $4,942,241.51. The contested confirmation hearing encompassed a full day.

The Court scheduled the ownership, claim valuation, and confirmation evidentiary hearings on an expedited basis due to the time constraints imposed by the Debtors' financing agreement with Textron. Textron has agreed to provide the Debtors with a $4 million forward-

financing facility for the sales of timeshare units, but the financing is contingent upon the confirmation of the Debtors' Plan before December 31, 2010.

As in any complex Chapter 11 proceeding, there was a flurry of activity right up until the time of the Hearing. Claims were amended, settlements were reached, and Plan terms were modified. The Debtors filed modifications to the Plan on December 21, 2010—one day prior to the Hearing. The Court gave the parties additional time to review and object to the Plan by allowing objections to be filed through Noon on December 24, 2010 and for the Debtors to file responses by Noon on December 27, 2010. Various objections and responses were filed, which have been considered by the Court. No party has sought additional time for filing a response.

The Debtors have met their burdens. The Debtors' Disclosure Statement satisfies the adequate information standards of the Bankruptcy Code. The Debtors have established by a preponderance of the evidence all of the statutory requirements for confirmation of the Plan.

### *Jurisdiction*

Celebrity and its affiliates are proper Debtors pursuant to Section 109 of the Bankruptcy Code. Confirmation of the Plan is a core proceeding. The Court has jurisdiction to conduct the Hearing and to confirm the Plan.

### *Disclosure Statement*

The Court entered an Order on November 24, 2010 (Doc. No. 427) conditionally approving the Disclosure Statement, scheduling the confirmation hearing for December 22, 2010, establishing procedures, and fixing the time for filing acceptances or rejections of the Plan (the "Balloting Order"). The Disclosure Statement, Plan, and Ballot were distributed to creditors and parties-in-interest on November 24, 2010.

The Disclosure Statement contains "adequate information" in compliance with Section 1125 of the Bankruptcy Code. It provides information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records that would enable a hypothetical investor of the relevant class to make an informed judgment about the Plan.

The Debtors modified the Plan, both in writing and orally, after votes were cast and prior to confirmation. The Modifications and *Ore Tenus* Modifications comply with all applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. The modifications do not materially and adversely alter the way any claim or interest holder is treated. They do not constitute substantial or adverse modifications. The modifications improve the treatment of the unsecured creditors. The Debtors were not required to issue an amended disclosure statement and no further solicitation was required.

The Modifications and *Ore Tenus* Modifications are deemed incorporated into the Plan. The Disclosure Statement is due to be approved.

### Due Process

The Debtors, as proponents of the Plan, have provided good and sufficient notice of: (a) the filing of the Plan and Disclosure Statement; (b) the deadline to file and serve objections to confirmation of the Plan and Disclosure Statement; (c) the deadline and procedures for voting on the Plan; and (d) the hearing date on the confirmation of the Plan.

The Debtors have afforded all parties-in-interest with an adequate opportunity to be heard regarding the Plan and Disclosure Statement, and the Plan complies with Bankruptcy Code Section 1127 and Federal Rule of Bankruptcy Procedure 3019. All parties received adequate notice in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of

Bankruptcy Procedure, and the Balloting Order. All parties have been afforded due process in this proceeding.

## Plan Elements

### *Ballot Tabulation:*

The Debtors' Amended Ballot Tabulation validly and correctly sets forth the tabulation of votes on the Plan, as required by the Bankruptcy Code, Bankruptcy Rules, the Local Rules and the Balloting Order. There were, as of the Ballot Deadline, sufficient votes in all classes, with the exception of Classes 4, 6, 7, and the Equity Classes (10 - 45) to have each Class vote in favor of the Plan. Votes were filed, or changed to "accept" the Plan, for Fifth/Third Bank, RBC Bank, and Equity after the Ballot Deadline expired. The Debtors filed their Late Ballot Motion seeking permission to count these ballots. The Debtors conducted the solicitation in good faith and the Late Ballot Motion is due to be granted. All such late and amended ballots will be counted.

The Debtors have solicited the votes and tabulated the Ballots in respect of the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Balloting Order.

The ballots of Dr. Meyers and CSI were properly excluded because there are pending objections to such claims. Neither Dr. Meyers nor CSI filed a motion to estimate their claim for voting purposes. Their votes are not to be counted.

### *Acceptance by Impaired Classes:*

The Plan was voted on by all Classes of Impaired Claims that were entitled to vote pursuant to the Bankruptcy Code and the Bankruptcy Rules. The Plan, with the addition of the Modifications and the *Ore Tenus* Modifications, has been accepted in writing by the requisite majorities of all Impaired Classes of Claims, except as to the Class 4 Claim held by Farmington

6

Bank and assigned to Dr. Meyers (the "Class 4 Claim"). The holder of the Class 4 Claim voted against the Plan. The Debtors have sought "cramdown" with respect to the Class 4 Claim.

## *Rule 3016(a):*

The Plan satisfies all of the applicable provisions of the Bankruptcy Code, and, as required by Federal Rule of Bankruptcy Procedure 3016(a), the Plan is dated and identifies the Debtors as the proponents. Pursuant to Bankruptcy Rule 3016(c), both the Plan and Disclosure Statement have described in specific and conspicuous language all acts proposed to be enjoined and identified all entities subject to the injunction contained in the Plan.

## *11 U.S.C. Section 1122:*

Article III of the Plan classifies each Claim against and Interest in the Debtors that is substantially similar to such Claims or Interests. The Plan satisfies Section 1122(a) of the Bankruptcy Code. Section 1122(b) of the Bankruptcy Code is not applicable.

## *11 U.S.C. Section 1123:*

The Plan meets all of the requirements of Section 1123 of the Bankruptcy Code. The Plan adequately and properly classifies all Claims and Interests required to be classified, and, accordingly, satisfies Section 1123(a)(1) of the Bankruptcy Code. The holder of the Class 4 Claim objected with respect to his secured claim. The Debtors have treated the Class 4 Claim as required by the cramdown provisions of Section1129(b)(2)(A)(iii) of the Bankruptcy Code.

All Classes of Claims are identified as Unimpaired or Impaired in Article IV of the Plan. The Plan satisfies Section 1123(a)(2) of the Bankruptcy Code. Article VI of the Plan specifies the treatment of each Impaired Class of Claims and Interests. The Plan satisfies Section 1123(a)(3) of the Bankruptcy Code.

The Plan provides the same treatment for each Claim or Interest in each Class unless the holder of such a Claim or Interest agreed to less favorable treatment. The Plan satisfies Section 1123(a)(4) of the Bankruptcy Code.

Article IX of the Plan sets forth the means by which the Plan will be implemented. The Plan makes adequate means for its implementation and satisfies Section 1123(a)(5) of the Bankruptcy Code.

The Debtors have disclosed the identities of those persons who will serve as officers and directors of the Reorganized Debtor. The Plan satisfies Sections 1123(a)(6) and (a)(7) of the Bankruptcy Code.

The Plan provides that the Debtors shall have through and including the Effective Date within which to assume or reject any unexpired lease or executory contract. In the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, then such unexpired lease or executory contract shall be deemed rejected. All parties to rejected contracts or lease shall have thirty (30) days from the Effective Date to file a rejection damages claim.

The Debtors have decided to assume the contract with RCI, LLC (the "RCI Contract") with certain agreed terms as set forth in Exhibit E attached to the Modifications and incorporated into the Plan. They are authorized to assume the RCI Contract.

### *11 U.S.C. Section 1129*:

*Sections 1129(a)(1) and (2):* The Debtors have complied with all of the provisions of the Bankruptcy Code and the Bankruptcy Rules governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, and all other matters considered by this Court in connection with this Chapter 11 Case. The Debtors have properly solicited votes with

respect to the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, as well as the Balloting Order. The Plan complies with all applicable provisions of the Bankruptcy Code. The Debtors have satisfied Sections 1129(a)(1) and (2) of the Bankruptcy Code.

*Section 1129(a)(3):* This Court has examined the totality of the circumstances surrounding the formulation of the Plan. The Plan has been proposed in good faith by the Debtors. The Debtors have acted in good faith in formulating and proposing the Plan and have properly performed their fiduciary duties. All parties have acted in good faith and received no unfair advantage. The primary purpose of the Plan is to provide the highest possible return to creditors.

Dr. Meyers and CSI contend the Plan violates Section 1129(a)(3) of the Bankruptcy Code because there was no open bidding for the equity in the Reorganized Debtors. They assert the Plan violates the absolute priority rule. The absolute priority rule and open bidding on equity are not relevant in this case because the Class 9 unsecured creditors voted overwhelmingly in favor of the Plan. The Debtors have satisfied Section 1129(a)(3) of the Bankruptcy Code.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that, the Debtors had immediately prior to the commencement of the Bankruptcy Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtors or Creditors Trust shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable

defenses that the Debtors had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

*Section 1129(a)(4):* All payments to be made by the Reorganized Debtors to Professionals retained by order of the Court for services or for costs and expenses in or in connection with this Chapter 11 Case, through the Confirmation Date, have been or are subject to review and approval by this Court upon the pending, and any supplemental, applications filed pursuant to Section 330, 331 or 503(b) of the Bankruptcy Code. Article VIII of the Plan provides for post-confirmation payment by the Reorganized Debtors of certain fees and expenses of professionals employed by the Reorganized Debtors, without prior Court order, and the Court shall have jurisdiction over this matter only as provided under the Plan. The Plan satisfies Section 1129(a)(4) of the Bankruptcy Code.

*Section 1129(a)(5):* The Debtors have disclosed the identities, affiliations, and compensation of the individuals who will serve as officers and/or directors of the Reorganized Debtors. The Officers of the respective Reorganized Debtors shall be the same as the Officers of the Debtors as of the Petition Date. Jared shall be the manager of Holding Co. The appointment, or continuation in office, of such individuals is consistent with the interests of creditors and with public policy. The Plan satisfies Section 1129(a)(5) of the Bankruptcy Code.

*Section 1129(a)(6):* The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency. Section 1129(a)(6) of the Bankruptcy Code is not applicable.

*Section 1129(a)(7):* Each Holder of an Impaired Claim that has not accepted the Plan will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the

10

Debtors were liquidated under Chapter 7 of the Bankruptcy Code. The Plan satisfies the "best interests" test pursuant to Section 1129(a)(7)(A)(ii) of the Bankruptcy Code.

*Section 1129(a)(8):* All but one Impaired Class of Claims have voted in favor of the Plan as set forth in the Amended Ballot Tabulation. The Class 4 Claim voted to reject. The Plan does not meet Section 1129(a)(8) as to the Class 4 Claim and the Debtors seek confirmation pursuant to the cramdown provisions of Section 1129(b)(2)(A) of the Bankruptcy Code. The Debtors intend to return to Dr. Meyers the FB Timeshare Inventory as the indubitable equivalent of his Secured Claim.

The Court held on December 20, 2010 at the hearing on the Motion to Value the FB Timeshare Inventory the Class 4 Claim is fully secured because the FB Timeshare Inventory value exceeds the amount of the Class 4 Claim. The conveyance of the FB Timeshare Inventory to Dr. Meyers satisfies in full the Class 4 Claim and Dr. Meyers will realize the indubitable equivalent of the Class 4 Claim.

*Section 1129(a)(9):* Article III.A. of the Plan provides that, except as otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors, all Allowed Administrative Claims shall be paid by the Debtors on the Effective Date unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder. Except to the extent that the Holder and the Reorganized Debtors have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive from the Reorganized Debtors, in full satisfaction of such Claim, payments equal to the Allowed Amount of such Claim. Allowed Priority Tax Claims will be paid based on a five (5) year amortization and maturity with interest at the Confirmation Rate (or in the case of the IRS, Internal Revenue Code Sections 6601 and 6621); the payments will be made quarterly. Payments will commence on the later of the

11

Effective Date, or on such date as a respective Priority Claim becomes Allowed. The Plan meets the requirements of Section 1129(a)(9).

*Section 1129(a)(10):* The Plan satisfies Section 1129(a)(10) of the Bankruptcy Code because at least one Impaired Class has voted to accept the Plan by the requisite majority, determined without including any acceptance of the Plan by Insiders. CSI and Dr. Meyers suggest the votes of Jared and homeowners associations should not be counted. They provided no evidence or legal basis to justify such exclusion. The votes of Jared and homeowners association are to be counted.

*Section 1129(a)(11):* The Debtors, through the testimony of Terry J. Soifer and the Projections, have presented competent and unrebutted evidence the Debtors have the ability to make all Plan Payments. Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors. The Debtors have satisfied the requirements of Section 1129(a)(11) of the Bankruptcy Code.

*Section 1129(a)(12):* The Plan provides for the payment on the Effective Date (or as soon as practicable thereafter) of all fees payable pursuant to Section 1930, Title 28, United States Code. The Plan satisfies Section 1129(a)(12) of the Bankruptcy Code.

*Section 1129(a)(13):* The Debtors have no benefit plans and, thus, Section 1129(a)(13) of the Bankruptcy Code has been satisfied by the Plan. It is not the principal purpose of the Plan to avoid taxes or the application of Section 5 of the Securities Act of 1933, as amended.

*Third-party releases:* The Plan and these cases present unusual circumstances that justify the granting of broad third-party releases in favor of Jared and Textron. Both Jared and Textron are providing crucial services to the Reorganization, and confirmation would not be possible without the contributions of Jared and Textron. Jared provided unrebutted testimony he

12

is contributing substantially all of his liquid assets and net worth to the Reorganization, and holders of Allowed Claims voted overwhelmingly in favor of the Plan. Textron is providing the $4 million forward-financing facility to the Reorganized Debtors.

*Substantive Consolidation:* The Plan provides the Debtors' bankruptcy cases are to be substantively consolidated. The Debtors presented unrebutted evidence to support substantive consolidation. The Court finds there is no evidence of harm caused by substantive consolidation and ample evidence of benefit related to such consolidation. The Debtors' cases shall be substantively consolidated.

## Conclusion

The Debtors have established by a preponderance of the evidence each of the confirmation requirements. The objections to the Disclosure Statement and Plan are due to be overruled. The Disclosure Statement is due to be approved and the Plan is due to be confirmed.

## CONCLUSIONS OF LAW

The Debtors, as the proponents of the Disclosure Statement and Plan, bear the burden of establishing the Disclosure Statement and Plan meet the statutory requirements of Chapter 11 of the Bankruptcy Code. The Debtors must establish each of the requirements of confirmation by a preponderance of the evidence. In re Celotex Corp., 204 B.R. 586, 611 n.31 (Bankr. M.D. Fla. 1996).

## Disclosure Statement

The Court conditionally approved the Disclosure Statement on November 24, 2010. The Debtors distributed the Disclosure Statement, Plan, and Ballot to creditors and parties-in-interest on November 24, 2010. The Debtors issued their Disclosure Statement in compliance with the disclosure and solicitation requirements of 11 U.S.C. Sections 1125 and 1126. The Disclosure

Statement contains "adequate information" as defined by 11 U.S.C. Section 1125(a)(1). It provides:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

The Debtors modified the Plan, both in writing and orally, after votes were cast and prior to confirmation. Such modification is allowed pursuant to 11 U.S.C. Section 1127. The modifications comply with Section 1127, Federal Rule of Bankruptcy Procedure 3019, and all other provisions of the Bankruptcy Code and Rules, including Sections 1122 and 1123. The Debtors were not required to issue an amended disclosure statement because the modifications do not materially and adversely change the way any claim or interest holder is treated. Enron Corp. v. The New Power Co. (In re New Power Co.), 438 F.3d 1113, 1117-18 (11th Cir. 2006). The Disclosure Statement is due to be approved.

### The Plan

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a Chapter 11 plan, which intersects with Sections 1122 and 1123. The Debtors have established the Plan complies with each of the applicable provisions of the Bankruptcy Code including 11 U.S.C. Sections 1122, 1123, and 1129, plus the cramdown provisions of Section 1129. The Debtors have established the elements for confirmation by a preponderance of the evidence. The Plan is due to be confirmed.

*Statutory Elements:* The Debtors are eligible debtors pursuant to 11 U.S.C. Section 109 and are authorized to file the Plan pursuant to 11 U.S.C. Section 1121. Confirmation of the Plan

is a core proceeding and this Court has jurisdiction to enter a final order with respect thereto. 28 U.S.C. §§ 1334, 157(b)(2)(L).

The Debtors have afforded all parties-in-interest with an adequate opportunity to be heard regarding the Plan and Disclosure Statement and the Plan complies with Bankruptcy Code Section 1127 and Federal Rule of Bankruptcy Procedure 3019. All parties received adequate notice in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Balloting Order. All parties have been afforded due process.

The Amended Ballot Tabulation validly and correctly sets forth the tabulation of votes on the Plan, as required by the Bankruptcy Code, Bankruptcy Rules, the Local Rules and the Balloting Order. There were sufficient votes in all classes, with the exception of Classes 4, 6, 7, and the Equity Classes (10 - 45) to have each Class vote in favor of the Plan. The late and amended ballots were properly counted.

The Debtors have solicited the votes and tabulated the Ballots in respect of the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Balloting Order. The ballots of Dr. Meyers and CSI were properly excluded and are not to be counted. 11 U.S.C. § 1126.

The Class 4 Claim is a secured claim and is subject to cramdown pursuant to 11 U.S.C. Section 1129(b)(2)(A)(iii). Dr. Meyers will realize the indubitable equivalent of the Class 4 Claim through the conveyance of the FB Timeshare Inventory to him, which conveyance shall satisfy the claim in full. 11 U.S.C. § 1129(b)(2)(A)(iii).

The Debtors are not required to conduct open bidding for the equity in the Reorganized Debtors. The absolute priority rule and open bidding is inapplicable because the Class 9 Unsecured Creditors voted overwhelmingly in favor of the Plan; no cramdown of the unsecured

class is being sought pursuant to 11 U.S.C. Section 1129(b)(2)(B)(ii). Bank of America National Trust & Savings Ass'n v. 203 North LaSalle Street Partnership, 526 U.S. 434, 449 (1999) ("[T]he absolute priority rule now on the books as subsection (b)(2)(B)(ii) may carry a new value corollary.").

The Plan, as evidenced by the totality of the circumstances, was proposed in good faith by the Debtors. The Debtors have established the Plan satisfies all of the applicable provisions of the Bankruptcy Code, including Sections 1122, 1123, and 1129, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court. The Debtors presented unrebutted evidence to support substantive consolidation. The Debtors' cases are due to be substantively consolidated.

Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED:**

1.    The Objection (Doc. No. 491) filed the Osceola and Orange County Tax Collectors is withdrawn and the Objections to confirmation are (Doc. Nos. 487, 495, 537, 538, 539, 540) are overruled.

2.    The Cramdown Motion (Doc. No. 525) as to the Class 4 Claim is granted.

3.    The Debtors' Late-Filed Ballot Motion (Doc. No. 513) is granted.

4.    Because the Class 4 Claim is determined to be fully secured, the Meyers Bad Faith Vote Motion (Doc. No. 493) is denied as moot.

5.    The Amended Joint Disclosure Statement (Doc. No. 422) is approved.

6.    The Plan (Doc. No. 529) is, in all respects, confirmed, pursuant to Section 1129 of the Bankruptcy Code, and all of its terms and provisions are approved. The Debtors and

Reorganized Debtors are authorized and directed to take any and all actions contemplated to be taken by it under the Plan.

7.      The RCI Contract is deemed assumed.

8.      The releases contained in the Plan regarding Jared and Textron as the Released Parties are hereby approved.

9.      The Debtors' cases consisting of Case Nos. 6:10-bk-03550-ABB through and including 6:10-bk-03585-ABB[2] are hereby substantively consolidated into the estate of In re Celebrity Resorts, LLC, Case No. 6:10-bk-03550-ABB, and all matters in connection with these cases shall henceforth be filed in the name and style of In re Celebrity Resorts, LLC, Case No. 6:10-bk-03550-ABB. Any and all assets of the Consolidated Debtors shall, as of the date of this Order, vest in the Celebrity Resorts, LLC estate and any and all claims against the Consolidated Debtors shall be deemed from the date of this Order to be claims against the Celebrity Resorts, LLC estate. The Court reserves jurisdiction to issue additional orders to effectuate the substantive consolidation as set forth above.

---

[2] The Consolidated Debtors having Case Nos. 6:10-bk-03550-ABB through and including 6:10-bk-03585-ABB, but excluding Case Nos. 6:10-bk-03553, 6:10-bk-03566; and 6:10-bk-03568 are: Celebrity Resorts, LLC; Celebrity Resorts of Brigantine Beach, LLC; Celebrity Resorts of Indian Shores, LLC; Celebrity Resorts of Lake Buena Vista, LLC; Celebrity Resorts of Orlando, LLC; Celebrity Resorts of Palm Coast, LLC; Celebrity Resorts of Reno, LLC; Celebrity Resorts of Steamboat Springs, LLC; Celebrity Resorts of Steamboat Springs-Hilltop, LLC; Celebrity Resorts Management Services, LLC; Celebrity Resorts Management, LLC; Celebrity Resorts of Clearwater Management Company, LLC; Celebrity Resorts of Colorado Management Company, LLC; Celebrity Resorts of Florida Management Company, LLC; Celebrity Resorts of Genoa, LLC; Celebrity Resorts of Hawley, LLC; Celebrity Resorts of Las Vegas Management Company, LLC; Celebrity Resorts of Nevada Genoa Management Company, LLC; Celebrity Resorts of Nevada Management Company, LLC; Celebrity Resorts of New Jersey Management Company, LLC; Celebrity Resorts Connections, LLC; Celebrity Resorts Holding Company, LLC; Celebrity Resorts Reservations, LLC; Celebrity Resorts Sales & Marketing, LLC; Hilltop Bar & Grill, LLC; Lucky Duck Café, LLC; Optima Financial Services, LLC; The Club of Celebrity Resorts, LLC; Venezia CE, LLC; Celebrity Resorts International Management Services, LLC; Celebrity Resorts International, LP; Celebrity Resorts Management Services, Inc.; Celebrity Resorts, Inc.

10. The Debtors shall comply with all terms and conditions of the Plan, the Modifications, the *Ore Tenus* Modifications, which terms and conditions are incorporated herein by reference.

11. In accordance with Sections 1141(b) and (c) of the Bankruptcy Code and the Plan, title to the Debtors' assets, shall vest in the Reorganized Debtors on the Effective Date. Until the Effective Date, the Debtors and Jared M. Meyers shall continue to perform their duties under the Code. Except as otherwise expressly provided in the Plan and in this Confirmation Order, all assets and property of the Debtors shall be vested in the respective Reorganized Debtors, free and clear of all liens, claims, and interests of creditors, equity security holders, and of general partners in the Debtors.

12. In accordance with Section 1141(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order are binding on the Debtor, the Reorganized Debtor, each Creditor, and every other party-in-interest in this case and each of their respective successors and assigns (whether or not such Creditors or parties-in-interest voted to accept the Plan, whether or not they are Impaired under the Plan, and whether or not any such Holder has filed, or is deemed to have filed a proof of Claim or proof of Interest), and any other Person giving, acquiring, or receiving property under the Plan, and any lessor or lessee of Property to or from the Debtor. The rights afforded in the Plan and the treatment of all Claims and Interests therein shall be in exchange for and in complete satisfaction of all Claims and Interests of any nature whatsoever, known or unknown, including, except as expressly provided in the Plan, interest accrued on or expenses incurred in connection with such Claims from and after the Order for Relief, against, the Reorganized Debtors or its property or interests in property.

18

13.     Pursuant to Section 1141(d)(1), except as otherwise provided in the Plan, or in this Order, the confirmation of this Plan: (A) discharges the Debtors from any debt that arose before the date of confirmation, and any debt of any kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not: (i) a proof of the claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) such claim is allowed under Section 502 of the Bankruptcy code; or (iii) the holder of such claim has accepted the Plan; and (B) terminates all rights and interests of equity security holders and general partners provided for by the Plan.

14.     The Debtors are hereby authorized and directed to execute any necessary documents to meet the statutory requirements if any, for filing necessary papers with the State of Florida or any other jurisdiction to effectuate the terms of the Plan.

15.     Payment of all Allowed Claims of Professionals for fees and/or expenses, as provided herein, shall be paid on the date on which any Order authorizing the payment of such fees and/or expenses to such professional becomes a Final Order, unless other provisions have been made between the Professional and the Reorganized Debtor.

16.     Upon the Effective Date, all executory contracts and unexpired leases of the Debtors not previously assumed by Order of this Court or subject to a pending motion to assume shall be deemed rejected, unless such contracts or leases were or are otherwise assumed pursuant to the Plan. Parties to such rejected leases and contracts are required to submit their claims for rejection damages, if any, pursuant to the provisions of 11 U.S.C. Section 502(g), within thirty (30) days from the Effective Date. All of the Debtors' right, title and interest in any contracts, leases or agreements entered into by the Debtors after the Petition Date, and/or not subject to

assumption or rejection under Section 365 of the Bankruptcy Code, shall vest in the Reorganized Debtors without further action on the Effective Date.

17.   The Reorganized Debtors are hereby vested with the rights and powers granted to the Debtors pursuant to Section 1107(a) of the Bankruptcy Code with respect to the allowance, treatment, or avoidance of Liens or Claims which remain unresolved as of the Effective Date.

18.   The Debtors/Reorganized Debtors shall have ninety days (90) days from the Confirmation Date to commence any claims objections or commence any adversary proceeding ("Objection/Adversary Deadline"). The Creditors Trust shall have an additional ninety (90) days thereafter to commence claim objections or commence any of the assigned Causes of Action. The Debtors, upon motion and a hearing, may extend the Objection/Adversary Deadline.

19.   In accordance with Sections 524 and 105(a) of the Bankruptcy Code, and except as otherwise provided in the Plan, the Modifications, the *Ore Tenus* Modifications, and this Confirmation Order on and after the Effective Date, all Persons are permanently enjoined and restrained from, commencing or continuing in any court any suit, action, or other proceeding, or otherwise asserting any Claim or Interest, seeking to hold liable the Reorganized Debtors, the Released Parties, or the property of either, for any claim, obligation, right, interests, debt or liability that has been treated pursuant to the Plan and for any and all claims arising under bankruptcy or nonbankruptcy law relating in any way to the Debtors, the Reorganized Debtors or their businesses, except for any claims or actions related to gross negligence or willful misconduct.

20.   In accordance with Section 105(a) of the Bankruptcy Code, and except as otherwise provided in the Plan, the Modifications, the *Ore Tenus* Modifications, and this Confirmation Order, all individuals or entities are stayed, restrained, and enjoined from

commencing, enforcing, perfecting, or setting off any claim, judgment, or interest against Debtors, the Released Parties, any of their past or current officers or directors, or any property thereof, or against any of Debtors' transferees including Reorganized Debtors, for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest and effecting the releases of the Released Claims under Article VIII; provided, however, that such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

21.     In accordance with the Plan, the FB Timeshare Inventory may be conveyed to Dr. Meyers upon entry of this Confirmation Order.

22.     In accordance with Section 1145 of the Bankruptcy Code, the offer or issuance, sale, exchange, or other transfer by the Debtors of any security in accordance with the Plan or this Confirmation Order, is hereby declared exempt from: (a) the provisions of Section 5 of the Securities Act of 1933, as amended (15 U.S.C. Section 77(e), as amended); and (b) any state or local law requiring registration for the offer or sale of a security or registration or licensing of the issuer or an affiliate thereof as an underwriter, broker or dealer in securities.

23.     Pursuant to Section 1146(a) of the Bankruptcy Code and the Plan, the issuance, transfer, or exchange of notes or securities under the Plan; the creation of any mortgage, deed of trust, or other security interest; the making or assignment of any lease or sublease; or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, or similar tax. All filing and recording officers are hereby directed to accept for filing or recording all instruments of transfer to be filed and/or recorded, without the payment of any such taxes.

24.     All entities holding Claims against or Interests in the Debtors that are treated under the Plan are hereby directed to execute, deliver, file, or record any document, and to take any action necessary to implement, consummate, and otherwise effect the Plan in accordance with their respective terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

25.     In accordance with Section 1142 of the Bankruptcy Code, the Debtors, the Reorganized Debtors and any other entity designated pursuant to the Plan are hereby authorized, empowered, and directed to issue, execute, deliver, file, and record any document, and to take any action necessary or appropriate to implement, consummate, and otherwise effectuate the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents issued, executed, and delivered by them as necessary or appropriate to implement or effectuate the transactions contemplated by the Plan.

26.     The Debtors are hereby authorized, upon subsequent order of the Bankruptcy Court, to amend or modify the Plan at any time prior to the Effective Date, but only in accordance with Section 1127 of the Bankruptcy Code and the Plan.

27.     The Debtors shall pay to the United States Trustee the fees imposed pursuant to 28 U.S.C. Section 1930(a)(6) within ten (10) days of the entry of this Order for preconfirmation periods.

28.     The Reorganized Debtors shall further pay to the United States Trustee the fees imposed pursuant to 28 U.S.C. Section 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. Section 1930(a)(6), until the earlier of the closing of this case by the issuance of a Final Decree by the Court, or until the entry of Orders by this Court dismissing this case or converting this case to another chapter under the Bankruptcy Code. The Reorganized

Debtors shall provide to the United States Trustee, upon the payment of each post-confirmation payment, an appropriate affidavit indicating all the cash disbursements for the relevant period.

29.     Within five (5) days after the entry of this Confirmation Order, the Debtors shall mail to all known Creditors and Holders of Interest and all other parties-in-interest (including Professionals) copies of this Confirmation Order and proof of such service shall be filed in accordance with the provisions of Local Rule 7005-1.

30.     Until this case is closed through the entry of a final decree, the Court shall retain jurisdiction pursuant to Rule 3020(d) to ensure that the provisions and the intent of the Plan are carried out. The Court shall also retain jurisdiction to hear and determine all claims against the Debtors to hear, determine, and enforce all Causes of Action arising in, arising under, or related to this Case and which may exist on behalf of the Debtors or the Reorganized Debtors; and to hear and resolve all objections to the fees or expenses of Professionals or others as provided for in the Plan. Nothing contained herein shall prevent the Debtors or the Reorganized Debtors from taking such action as may be necessary in the prosecution of any cause of action which may exist on its or on the Debtors' behalf, and nothing contained herein shall prevent any creditor from enforcing any claim it may have against third parties who may be liable as a result of the Debtors' obligation to such creditor except as specifically provided for herein.

31.     In the event the Reorganized Debtors fail to follow the provisions of M.D. Fla. L.B.R. 3022-1, Reorganized Debtors shall file a report within ninety (90) days from the date of the Confirmation Order, setting forth the progress made in consummating the Plan. The Report shall include:

(a)     a statement of distribution by Class, name of Creditor, date of distribution, and amounts paid;

(b)     a statement of transfer of property; and

23

(c)     a statement of affirmation that Reorganized Debtors have substantially complied with the provisions of the confirmed Plan.

32.     Hereafter, the only parties to whom notices of matters and proceedings shall be given, and on whom service of pleadings is required shall be limited to the Reorganized Debtors, care of Jared M. Meyers, and his professionals, the Creditors Trust via the Creditor Agent and his counsel, and the United States Trustee, by notifying or serving them and their respective counsel of record at the following addresses:

Reorganized Debtors:

Celebrity Resorts, LLC, *et al.*
c/o Jared M. Meyers
8451 Palm Parkway
Orlando, FL 32836-6414

Celebrity Resorts, LLC, *et al.*
c/o Marty A. Stone, SVP and General Counsel
8451 Palm Parkway
Orlando, FL 32836-6414

With a copy to:

R. Scott Shuker
Latham, Shuker, Eden & Beaudine, LLP
PO Box 3353
Orlando, FL 32802-3353

United States Trustee
Attn: Timothy Laffredi
135 West Central Blvd, Suite 620
Orlando, FL 32801

Creditors Trust:
Leigh Meininger, Esq.
P.O. Box 1946
Orlando, FL 32802-1946

With a copy to:

Roy S. Kobert, Esq.
Broad and Cassel
PO Box 4961
Orlando, FL 32802-4961

33.     This Confirmation Order shall be deemed to constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or other governmental authority, whether foreign or domestic, or judicial or administrative body, whether foreign or domestic, with respect to the implementation or consummation of the Plan.

34.     The omission of any reference or specific discussion of all or part of any particular provision of the Plan herein shall have no effect on the validity, binding effect and enforceability of any other provision of the Plan. To the extent of any inconsistencies between the terms of this Confirmation Order and the Plan, the terms of this Confirmation Order shall control, except as otherwise provided herein.

35.     If any provision of this Confirmation Order is hereafter modified, vacated, or reversed by subsequent Order of this Court or any other court of competent jurisdiction, such reversal, modification, or vacation shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order; nor shall such reversal, modification or vacation hereof affect the validity or enforceability of such obligations. Notwithstanding any reversal, modification or vacation hereof, any such obligations incurred or undertaken pursuant to and in reliance on this Confirmation Order prior to the effective date of such reversal, modification or vacation shall be governed in all respects by the provisions hereof and of the Plan, and all documents, instruments and agreements related thereto, or any amendments or modifications thereto.

Dated this 26th day of December, 2010.

_____
ARTHUR B. BRISKMAN
United States Bankruptcy Judge

## LIST OF DEBTORS UNDER JOINT PLAN OF REORGANIZATION

| | Debtor | Bkry Case No |
|---|---|---|
| 1. | Celebrity Resorts, LLC (CR) | 6:10-bk-3550 |
| 2. | Celebrity Resorts of Brigantine Beach, LLC (CRBB) (F/K/A Celebrity Resorts of New Jersey, LLC) | 6:10-bk-3551 |
| 3. | Celebrity Resorts of Indian Shores, LLC (CRIS) | 6:10-bk-3552 |
| 4. | Celebrity Resorts of Lake Buena Vista, LLC (CRLBV) | 6:10-bk-3554 |
| 5. | Celebrity Resorts of Orlando, LLC (CRO) | 6:10-bk-3555 |
| 6. | Celebrity Resorts of Palm Coast, LLC (CRPM) | 6:10-bk-3556 |
| 7. | Celebrity Resorts of Reno, LLC (CRR) | 6:10-bk-3557 |
| 8. | Celebrity Resorts of Steamboat Springs, LLC (CRSS) | 6:10-bk-3558 |
| 9. | Celebrity Resorts of Steamboat Springs-Hilltop, LLC (CRSS-H) | 6:10-bk-3559 |
| 10. | Celebrity Resorts Management Services, LLC (CRMS) | 6:10-bk-3560 |
| 11. | Celebrity Resorts Management, LLC (CRM) | 6:10-bk-3561 |
| 12. | Celebrity Resorts of Clearwater Management Company, LLC (CRCWMC) | 6:10-bk-3562 |
| 13. | Celebrity Resorts of Colorado Management Company, LLC (CRCMC) | 6:10-bk-3563 |
| 14. | Celebrity Resorts of Florida Management Company, LLC (CRFMC) | 6:10-bk-3564 |
| 15. | Celebrity Resorts of Genoa, LLC (CRG) | 6:10-bk-3565 |
| 16. | Celebrity Resorts of Hawley, LLC (CRH) | 6:10-bk-3567 |
| 17. | Celebrity Resorts of Las Vegas Management Company, LLC (CRLVMC) | 6:10-bk-3569 |

EXHIBIT "A"

| 18. | Celebrity Resorts of Nevada Genoa Management, LLC (CRNGM) | 6:10-bk-3570 |
|---|---|---|
| 19. | Celebrity Resorts of Nevada Management Company, LLC (CRNMC) | 6:10-bk-3571 |
| 20. | Celebrity Resorts of New Jersey Management Company, LLC (CRNJMC) | 6:10-bk-3572 |
| 21. | Celebrity Resorts Connections, LLC (CRC) | 6:10-bk-3573 |
| 22. | Celebrity Resorts Holding Company, LLC (CRHC) | 6:10-bk-3574 |
| 23. | Celebrity Resorts Reservations, LLC (CRR) | 6:10-bk-3575 |
| 24. | Celebrity Resorts Sales & Marketing, LLC (CRSM) (f/k/a Florida Property Development, LLC) | 6:10-bk-3576 |
| 25. | Hilltop Bar & Grill, LLC (HBG) | 6:10-bk-3577 |
| 26. | Lucky Duck Café, LLC (LD) | 6:10-bk-3578 |
| 27. | Optima Financial Services, LLC (OFS) | 6:10-bk-3579 |
| 28. | The Club of Celebrity Resorts, LLC (CCR) | 6:10-bk-3580 |
| 29. | Venezia CE, LLC (VCE) | 6:10-bk-3581 |
| 30. | Celebrity Resorts International Management Services, LLC (CRIMS) | 6:10-bk-3582 |
| 31. | Celebrity Resorts International, LP (CRI) | 6:10-bk-3583 |
| 32. | Celebrity Resorts Management Services, Inc.(CRMSI) | 6:10-bk-3584 |
| 33. | Celebrity Resorts, Inc.(CR-INC) | 6:10-bk-3585 |

EXHIBIT "A"